Winifred Erickson, Appellant, v. Town of Manson et al.,
Appellees.

**NEGLIGENCE:** Contributory Negligence—Knowledge of Danger—

1  **Distracted Attention.**  The court cannot pass the sentence of guilt of contributory negligence upon the action of one with attention distracted in running against a guy wire in a public street, of the existence of which wire he had no knowledge.

**PLEADING:** Form and Allegation—Nuisance and Negligence.
2  Nuisance may exist although there be no negligence; there may be actionable negligence which does not constitute a nuisance; and negligence and nuisance may combine in the same act. Pleading reviewed, and held to predicate liability on both negligence and nuisance.

**MUNICIPAL CORPORATIONS:** Streets, etc.—Obstructions—Au-
3  thorization by City—Effect.  The erection of obstructions in a public street, *under license or permission of the municipality*, does not necessarily render the erector immune from an action for damages for maintaining a nuisance.  So held as to telephone guy wires, so constructed as to discommode the public. Sec. 2159, Code, 1897.

**TELEGRAPHS AND TELEPHONES:** Construction—Discommod-
4  ing Public—Authorization by City—Nuisance.  Telephone guy wires so constructed as to discommode the public, in violation of Sec. 2159, Code, 1897, are actionable nuisances, even though erected under the license or permission of the municipality.

*Appeal from Calhoun District Court.*—E. G. ALBERT, Judge.

SATURDAY, DECEMBER 16, 1916.

REHEARING DENIED FRIDAY, JUNE 22, 1917.

ACTION, at law to recover damages for personal inju- ries alleged to have been caused by the negligent mainte-nance of a telephone guy wire in and along a public street in the town of Manson.  The defendants denied all negligence, pleaded that the guy wire was a necessary and proper part of the telephone system, erected and maintained by the telephone company upon the streets of the town under the authority and direction of the officials of the town. Upon these issues, the case was tried to a jury, and, at the conclusion of plaintiff's testimony, the trial court, on mo-

tion of the defendants, directed a verdict in their favor.— *Reversed and remanded.*

*Faville & Whitney* and *Robert Healy,* for appellant.

*V. P. McManus, J. W. Jacobs, E. C. Stevenson,* and *Kelleher & Price,* for appellees.

Deemer, J.—I. Something like 15 years ago, the defendant telephone company, acting under a license or permission from the defendant town, constructed its telephone system over and along the streets of the town, and erected its poles and wires along the south side of Third Street therein. As a part of this system, it constructed the guy wire in question, which was attached to poles, one standing at or near the northeast corner of Third and Calhoun Streets in said town, and the other in the parking nearly in front of the property in which plaintiff lived at the time of the accident, the said property being a corner lot, or lots, bounded on one side by Third Street and on the other by Calhoun. Third Street runs east and west, and Calhoun Street, north and south. There were no sidewalks around plaintiff's property at the time the accident happened, but there was a pathway running east and west along the north side of the property. This was kept free from snow during the winter preceding plaintiff's accident, but neither the plaintiff nor any of the members of the family used this pathway, for the reason that the north door of the house was closed and boarded up as a protection from the cold winds of the winter. This door was opened, however, about a week prior to the accident. Before the opening of this door, the south door of the house was the only one which was used. One desiring to leave the house used this south door; thence proceeded in a westerly direction toward the corner of the lot, and thence westerly again on the street.

Plaintiff and her husband moved into the property December 18, 1913, and were occupying the same on April 26,

1914, when the accident occurred. During the last week of the month of December, plaintiff's husband discovered the guy wire in question, and within a few days thereafter, he notified the manager of the telephone company of the situation, and expressed his desire to have the wire removed. The manager replied that he was acquainted with the situation and would remove the wire. The city officials also had knowledge of the situation, and sometime in March, 1914, plaintiff's husband spoke to the mayor about it, had him go out and look at it, and then told the mayor that it was dangerous and he wanted it removed. As we have already said, this guy wire ran from near the top of one telephone pole down to another pole, the latter being almost directly opposite plaintiff's house, and within two feet of the lot line. The wire was attached to this latter pole about 3 or 4 feet from the ground. The first named pole was about 140 feet from the one to which the guy wire was attached near the ground, the wire being attached to this first named one from 25 to 30 feet from the ground. Proceeding on a direct line from the north door of plaintiff's house, the wire was not more than 5 feet from the ground. Between the two poles there was a tree, the main body of which was perhaps 10 inches in diameter, and this tree was so situated that one coming directly out of plaintiff's north door and passing into the traveled portion of the street would find this tree trunk and the telephone pole about equidistant from his path, the wire at that point being not to exceed 5 feet from the ground. The guy wire was a small single strand No. 9 or 10 wire, not easily seen. It was not of the size or material generally used for that purpose, and was called a "made-guy," and, according to some of the testimony, was not properly put up, and was unnecessary and not of the usual, ordinary and proper form of guy.

On April 26, 1914, plaintiff's husband drove his auto to his home, stopping it on the side of the street nearest

his house and almost directly north of the north door thereof, and at a point midway between the telephone pole to which the lower end of the guy wire was attached and the tree which we have hitherto mentioned. He called his wife and three children to join him for a ride in the machine. Pursuant thereto, they immediately got their wraps and started for the auto, the children preceding their mother. The mother came hurriedly out of the house, buttoning her coat, and passed quickly on a direct line from this north door toward the auto. As she attempted to pass between the telephone pole and the tree near at hand, the wire caught her diagonally across the face, throwing her backward upon the ground, and causing serious and permanent injuries. She testified that she did not know the guy wire was there, had never seen it before, and did not see it at the time of the accident. There was also testimony that the grass was green and that the trees were just beginning to leaf out; that there was a row of trees on the other side of the east and west street, north of the property; and that all of these trees cast such shadows as to obscure the wire. Plaintiff also testified, in substance:

That she could not say whether she looked to see whether there were any obstructions or not; that she did look to see if there were any limbs of the trees in her way; that she was not expecting any obstructions and was not certain as to whether she had looked to see whether there were any overhead obstructions or not; that she was watching the children as she left her house for the automobile, and did not look particularly for any obstructions; that she was attracted by the passing of an automobile, which passed on the north side of her husband's car; and that, for the most part, her attention was directed to her children, as they were entering the car, and to obstructions which might lie along the surface of the ground, but not to obstructions such as the guy wire in question.

This is the substance of the testimony, save that we do not set out that regarding the character of plaintiff's injuries, as that matter does not seem to be involved on this appeal, and in any event, this was a jury question.

To sustain the ruling of the trial court, it is argued that, under the testimony, plaintiff was guilty of contributory negligence as a matter of law in not looking out for and discovering the wire as she proceeded toward the auto. It is also contended that plaintiff's action is bottomed, not upon negligence, but upon the theory that the guy wire was a nuisance, and that there was no nuisance, because the town officials having charge of the matter legalized the nuisance and expressly authorized the erection and maintenance of the guy wire. Counsel also suggest that, even if the action be for negligence, that claim is out of the case because of the license or permission granted by the town officials to the telephone company to construct its poles, wires, etc., in the street.

II. With reference to the claim of contributory negligence, we need do no more than call attention to the testimony given by plaintiff regarding her conduct after her husband called her to the machine. She did not, according to the testimony, know, before the accident, that there was a guy wire at the point in question, and no reason appears why she should have known of it. She never had occasion, prior to the accident, to pass that way, or to observe what was in the street to the north of the house. Her attention was somewhat distracted, and the wire was not one which was easily seen. In such circumstances, the question of contributory negligence was for a jury. *Bonjour v. Iowa Telephone Co.*, 176 Iowa 63; *Middleton v. City of Cedar Falls*, 173 Iowa 619; *Mathews v. City of Cedar Rapids*, 80 Iowa 459. Nothing further need be added on this proposition.

1. NEGLIGENCE: contributory negligence: knowledge of danger: distracted attention.

III. Whether the action is for nui-

2. PLEADING:
form and alle-
gation: nui-
sance and neg-
ligence.

sance or negligence depends upon the alle-
gations of the petition, although it should
be said that a nuisance may exist although
there be no negligence, and there may be
actionable negligence which does not constitute a nuisance.
Again, there may be both; that is to say, negligence may
be of that type which will constitute a nuisance. Turning
to the petition, we find the following, among other, allega-
tions:

"That the defendant telephone company, more than a
year prior to the institution of this suit, created a nuisance
and maintained said nuisance for more than. a year last
past. said nuisance consisting of stringing and maintain-
ing a line of wire on the north side of said lot facing on
Third .Street, or on the south side of the street and adja-
cent to said lot, said wire extending a distance of about 150
feet, one end of which was fastened to a. pole, said fastening
being at a distance of about 4 feet from the ground, and
the other end of said wire being fastened to another pole
at a distance of about 20 feet from the ground.  *  *  *
The plaintiff avers that the defendants, separately, joint-
ly and concurrently, acted in a willful, negligent and im-
proper manner, in erecting, stretching, tying and maintain-
ing said wire in the manner above described, and keeping
the same in said condition for said period and length of
time."

Along with these are allegations of plaintiff's freedom
from contributory negligence. These allegations, it seems
to us, charge not only nuisance, but negligence, and it is
to be noted that defendants are a little inconsistent in their
arguments. If the action is bottomed on nuisance pure
and simple, the question of contributory negligence is out
of the case; for, as a rule, if the action is not bottomed on
negligence, there can, strictly speaking, be no contributory

negligence. We do not, of course, overlook the rule that a defendant may interpose inconsistent defenses, and counsel in argument here, in support of the rulings of the trial court, are not bound to be consistent in their claims. We mention the fact, however, because of the strong insistence by counsel that plaintiff was guilty of contributory negligence. Assuming, then, that the petition charges negligence, we think there was sufficient testimony to take the case to a jury on that proposition, and that it would not do, under the facts shown by this record, to declare as a matter of law that either party defendant was free from negligence. That, as we have said, under the testimony offered by plaintiff, was a jury question.

IV. Assuming, however, that the petition is bottomed on the claim of nuisance, a jury may well have found, under the testimony adduced, that the license or permission given by the city officials for the construction complained of, did not render either defendant immune from an action for damages. Some erections or constructions upon a street may be so legalized that they do not constitute a nuisance; as, for example, telephone or telegraph poles of proper construction and properly placed. But our statute expressly provides that poles and wires must be so constructed as not to discommode the public. See Sec. 2159, Code, 1897; *State v. Iowa Telephone Co.*, 175 Iowa 607. There-

3. MUNICIPAL COR- fore, in the placing of poles and wires, care PORATIONS: streets, etc.: must be taken to see that they are not so obstructions: authorization placed as to constitute a nuisance. *Wheel-* by city: effect. *er v. City*, 131 Iowa 566; *Kent v. City of Harlan*, 170 Iowa 90. The jury may have found that this small guy wire was a mere temporary affair or expedient which both the telephone company and the city expected to remove or have removed, in a short time, and might also have found that, as constructed, it amounted to an actual

nuisance in front of plaintiff's property. Now, while certain things which might otherwise be a nuisance may be legalized, still there are limitations upon this doctrine. In *Pacific Tel. & Tel. Co. v. Hoffman*, (C. C. A.) 208 Fed. 221, the court said:

4. TELEGRAPHS AND TELE-PHONES: construction: disaccommoding public: authorization by city: nuisance.

"The primary and general use of a highway is for travel, and any obstruction that renders it dangerous or unsafe for that purpose is unlawful; and, although a telephone company may have the right to occupy a highway with its poles, yet if it secures them in the highway by guy wires so as to endanger the public travel, or the safety of individuals in the reasonable and ordinary use of the highway, such method of securing and maintaining its poles is an obstruction, and the law declares that such an obstruction is a nuisance, and the act of maintaining such a nuisance, negligence."

In *Kent v. City of Harlan*, supra, we said:

"We have held that hitching posts upon a street, authorized by the proper authorities, are not a nuisance *per se* (citing cases). It does not follow, however, that they may not be a nuisance in fact, under the facts of a given case. *If a nuisance in fact, no authority is conferred upon the city to maintain them as such.*"

See, also, *Mosheuvel v. District of Columbia*, 48 L. Ed. (U. S.) 170.

Something is said in argument to the effect that there is no testimony that the nuisance or negligence was the proximate cause of the injury. We do not go into that question, for it was manifestly one for the jury. As to the liability of the defendant city, there was enough to take that question to the jury, under the doctrine announced in *Wheeler v. City*, supra.

The case should, we think, have been submitted to the

jury. The judgment must therefore be reversed, and the cause remanded for a retrial.—*Reversed and remanded.*

WEAVER, EVANS and PRESTON, JJ., concur.