EUGENE APPLEBY, Appellee, v. L. S. CASS, Appellant.

No. 39985.

FEBRUARY 11, 1930.

OPINION ON REHEARING MARCH 10, 1931.

*Mears, Lovejoy, Jensen & Gwynne* and *George W. Dawson,* for appellant.

*McCoy & Beecher* and *J. H. Meyers,* for appellee.

EVANS, J.—The collision in question occurred near midnight in May, 1927, on an intersection of Commercial Street and West Eleventh Street. These streets have diagonal courses, with intersection at right angles. West Eleventh Street extends from the northeast to the southwest, and Commercial Street from southeast to northwest. The plaintiff was driving northwesterly on Commercial Street, and Parkin was driving southwesterly on West Eleventh Street. The collision occurred at the extreme corner of the intersection, on its westerly side, as indicated by the position of the cars when they came to a stop. This would be on the right side of West Eleventh Street, looking southwesterly, and on the left side of Commercial Street, looking northwesterly. It is the contention of the plaintiff, however, that the collision occurred on the right side of Commercial Street, looking northwesterly, and that his car was pushed to the left side of the street by the car of the defendant.

The immediate circumstances of the accident, as described by the plaintiff, were: He approached the intersection from the southeast, and saw a car approaching the intersection from the northeast. He therefore brought his car to a stop, at a distance of four feet within the intersection. After the on-coming car had passed the intersection, he started his car, and proceeded cautiously across the intersection, when his hind wheels were struck by the defendant's car, near the northwesterly line of the intersection. When he started to cross the intersection, he looked northeasterly along West Eleventh Street for other cars, but saw none. He did not see the defendant's car at all until after his car was struck. He was severely injured, as a result of the collision.

The plaintiff's petition set forth ten specifications of alleged negligence, which may be summarized as follows: (1) Failure to operate the automobile in a careful and prudent manner and at a careful rate of speed; (2) the operation of the car at an excessive and dangerous rate of speed; (3) the operation of the car at a speed in violation of an ordinance; (4) failure to reduce the rate of speed to a proper rate when approaching the intersection; (5)

failure to have the automobile under control when approaching the intersection; (6) failure to sound the horn in approaching the intersection; (7) failure to display two or more lights properly lighted on the forward part; (8) failure to keep a proper lookout for others on the intersection; (9) failure to stop the automobile when the driver thereof saw, or ought to have seen, the plaintiff's car in the intersection; (10) failure to stop the car after discovery of plaintiff's peril.

The answer was, in effect, a general denial.

The plaintiff's own testimony may be accepted as giving his version of the circumstances of the accident. This has already been briefly stated. The complaints of appellant, as presented here, relate largely to the instructions of the court. One ruling of the court on admission of testimony is complained of, and we shall give that our first attention.

I. The plaintiff's alleged injury comprised a perforation of the right temple by a bolt. One of his physicians, Rountree, was examined as a witness. He purported to describe the injury as he had observed it. A radiograph thereof had  been taken, and was exhibited to the jury. By interrogation and answer, the witness purported to explain or interpret to the jury the significance of the various features of the radiograph. This examination was properly objected to by the defendant, on the ground that it was not proper expert testimony, and that the picture itself was the best evidence of what it showed. This objection was overruled, and the ruling is complained of. The appellant relies for authority upon the following of our cases: *Elzig v. Bales*, 135 Iowa 208; *Lang v. Marshalltown L., P. & R. Co.*, 185 Iowa 940; *Daniels v. Iowa City*, 191 Iowa 811. In the *Elzig* case we held that a photograph was itself the best evidence of what appeared thereon. In the *Lang* case we applied the same rule to a skiagraph of the plaintiff's spine, which graph was offered in evidence to show a curvature thereof. We may assume, from what appears in the opinion in that case, that, on the question of curvature, the skiagraph performed the same function as a photograph would have done. It either indicated a curvature or it did not. In the *Daniels* case we opened, rather than closed, the door to expert evidence offered for the purpose of interpretation of a radiograph, though we did hold that the

ruling of the district court in withholding such evidence was without prejudice. We said in that case:

"Whatever criticism may be directed against the rule announced in the foregoing cases, the record shows that this expert was permitted to testify as to what X-ray photographs show, how they are taken, how things are indicated thereon, and his physical examination of the plaintiff. We appreciate that too strict an application of the best evidence rule as applied to X-ray photographs, is not desirable; but it may not be said, under the instant record, that any prejudice resulted in sustaining the objections to the questions propounded. It is proper for an expert to explain an X-ray photograph in such particulars as are not understood by a layman. See *State v. Matheson,* 142 Iowa 414. What the jury could see and understand about the matter is not the subject of expert testimony, and this we understand to be the effect of our prior decisions. A radiograph may be used for purposes of demonstration by an expert as though he had the object itself before the jury for explanation. *Sheldon v. Wright,* 80 Vt. 298. That the bone can be distinguished from the flesh in an X-ray photograph, and that the bone would make a heavier shade than the muscle, is proper expert testimony. Such scientific facts would not be known by the average layman. *Missouri K. & T. R. Co. v. Coker* (Tex. Civ. App.), 143 S. W. 218."

In the case at bar, we do not have the exhibit before us. We may, however, properly take judicial notice of what is well known to the profession. That is that a radiograph of internal conditions does not necessarily or ordinarily interpret itself to the mere observation of a nonexpert. These graphs carry various lights and shadows, the significance of which is known to the expert, and is not known to the nonexpert. The purpose of the radiograph in this case was to show the fact, as well as the location, of a perforation of the temple. Under the diagnosis of the physician, there was a "hole" in the temple. This "hole," as such, was indicated to the expert by certain characteristics of light and shadow. It was not observable as a "hole" to the ordinary sight of the nonexpert. The purport of the expert testimony at this point was to explain the significance of the lights and shadows of the picture. We think such explanation was essential to a proper understanding of the significance of the picture. In such a case, an expert interpretation of the significance of the various fea-

tures of the radiograph should be deemed admissible. Where a radiograph is offered to serve the mere function of a photograph, then it is subject to the same rule as would apply to a photograph. This was somewhat the situation in the *Lang* case, the question there being whether a straight line or a curved one was presented by the skiagraph. We hold, therefore, that the evidence was proper in this case. See also, *State v. Matheson*, 142 Iowa 414, wherein such evidence was held proper.

II. The defendant requested the court to give the following instruction:

"You are instructed that drivers of motor vehicles upon the streets of the city have the right to presume that other persons also driving upon the streets of the city will not violate the law,  but will observe the rules of the road, as prescribed by law; and in this connection you are told that a person approaching an intersection, observing due care on his own part, has the right to assume that a person approaching from his left will observe the rule of law, and *yield the right of way to him.*"

The court refused such instruction, but gave the following Instructions 5 and 6:

"5. You are instructed that the highway is a means of public travel; that the drivers of automobiles are charged with the knowledge of the use of the highway for such travel, and are required to use reasonable and ordinary prudence and care in the use of such highway. In the use of the highway, the driver of an automobile is not called upon to anticipate negligence upon the part of the driver of another automobile while using such public highway.

"6. You are instructed that it is the law of this state that, where two vehicles are approaching an intersection of any public street or highway, so that their paths will intersect, if there is danger of a collision, the vehicle approaching the other from the right shall have the right of way.

"You are further instructed that the right of precedence at a crossing occasioned by such statute has no proper application except where the vehicles on the intersecting streets are approaching the crossing so nearly at the same time, and at such rate of speed, that, if both proceed without regard to the other, a

collision or interference between them is reasonably to be apprehended. In such case it is the right of the one having the precedence to continue his course, and it is the duty of the other to yield the right of way; but, if the traveler not having such right or precedence gets to the crossing and finds no one approaching upon the other street within such distance as reasonably to indicate danger or interference or collision, he is under no obligation to stop or wait, but may proceed, and use such crossing as a matter of right.''

The appellant complains of the refusal to give the requested instruction. The appellee answers that Instructions 5 and 6, given by the court, as above set forth, were a fair equivalent of the requested instruction. This is manifestly so.

III. One of the grounds of negligence submitted by the court to the jury was whether the defendant failed to carry lights. The appellant contends that there was no evidence in support of  this charge of negligence. The evidence relied upon by the appellee in support of the instruction is that of the plaintiff himself, as a witness, who testified that, as he entered the intersection, he looked northeasterly along Eleventh Street, and saw no approaching automobile or automobile lights. He testified, rather argumentatively, that the defendant's automobile had no lights in operation. This was an inference which he drew from the alleged fact that he looked for lights and saw none. The complaint is not that he testified to his own inference, but that his testimony became entirely nugatory because of such inference. His testimony at this point is quite unsatisfactory, and we have given it much consideration, both as to its admissibility and its legitimate effect. We are constrained to the final conclusion that the testimony of the plaintiff, such as it was at this point, would warrant the inference by the jury that the lights of the defendant were not in operation. It would likewise warrant the jury in refusing such inference therefrom. It is forbidden to us to pass upon the weight of the testimony.

IV. The appellant complains of the refusal of the court to give Requested Instruction No. 3. This was as follows:

''If you find from the evidence that the plaintiff stopped his car at, or very close to, the intersection, at a point where he could

 see to his right a distance of several hundred feet along Eleventh Street in the direction from which the defendant's car was coming, you must then conclude, either that he did not look, or that he did in fact see the defendant's car approaching; and in either case, if he proceeded forward in the line of the on-coming car, and was struck, he would be guilty of contributory negligence, and cannot recover in this case.''

The point raised by the appellant in this requested instruction inheres in the question considered in our foregoing Division III. The general proposition contended for by appellant, that it was the duty of the plaintiff to see what was plainly visible to him, if he looked, is to be conceded. This principle is applied in cases where no qualification of visibility is involved. In this case, the accident happened, not in the daytime, but in the night. The plaintiff testified that he looked northeasterly along Eleventh Street and could see the lights upon the bridge, 475 feet away. The very existence of these distant lights could have added some confusion to the visibility of intervening lights. It could, therefore, be true that the defendant's lights might have been burning and that the plaintiff saw the bridge lights 475 feet away and yet failed to distinguish between the lights of the defendant and the lights upon the bridge. The jury returned a special finding that the plaintiff was not negligent in failing to discover the defendant's approach to the intersection. It is further to be noted that the defendant's contention at this point is itself argumentative. The argument is that, if plaintiff failed to see the light, it must be true that he did not look. The counter argument of the plaintiff is that, inasmuch as he did look, and saw no light, therefore it must be true that the defendant carried no light. In either case, the inference was one for the jury, and not one to be drawn either by the witness, as a matter of fact, or by the court as a matter of law. There was no error in the refusal of the court to give this requested instruction.

V. The defendant moved for an instructed verdict, on the ground that the evidence was insufficient to sustain a verdict for the plaintiff. The court overruled the motion, and error is assigned on the ruling.

We think the ruling must necessarily be sustained, if we are

correct in our foregoing conclusions. According to the plaintiff's testimony, he came to a full stop, after proceeding to a distance  of four feet upon the intersection. He did this to await the passing of a car just preceding the defendant's car, and coming from the same direction. He thereafter started his car, and had proceeded well into the intersection when he was struck by the defendant. The defendant's car was traveling on the right-hand side of Eleventh Street; and struck the rear wheel of the plaintiff's car. This would indicate that the plaintiff had entered the intersection clearly in advance of the defendant. The evidence of the plaintiff is to the effect that the impact from the defendant's car carried him across Commercial Street to the northwesterly corner of the intersection, over the curb and onto the terrace. The car of the defendant came to a stop with its front wheels upon the terrace. The car of the defendant was a seven-passenger Cadillac, and was much the heavier of the two cars. If the evidence of the plaintiff is to be accepted as true, concerning the immediate circumstances of the impact, the driver of the defendant's car came under a duty of discovery and lookout. The intersection was already occupied, before the defendant's car entered upon it. The jury could find, from the evidence of the defendant's driver, that, upon his discovery of the presence of the plaintiff's car in front of him, he did not at first apply his brakes as efficiently as he could have done, but temporized, in the apparent expectation that the plaintiff's car would move forward out of his way. It appears that the plaintiff had shifted from first to second gear, and was still traveling in second gear at the moment of the impact. If he had been going a little faster, it was quite possible that he would have escaped the impact entirely. All these matters are in the field of fact, and were necessarily for the consideration of the jury.

We reach the conclusion that no reversible error appears in the record. The judgment is, accordingly,—*Affirmed.*

FAVILLE, C. J., and MORLING, KINDIG, and GRIMM, JJ., concur.