Soren Thompson, appellee, v. Waterloo, Cedar Falls &
Northern Railroad Company, appellant.

No. 47969.

(Reported in 50 N.W.2d 363)

December 13, 1951.

Swisher, Cohrt & Swisher, of Waterloo, for appellant.

R. P. Birdsall, Joseph Thornton and George B. Worthen, all of Waterloo, for appellee.

WENNERSTRUM, J.—Plaintiff, in a law action, sought recovery for personal injuries and damages to his automobile by reason of a collision between the vehicle owned and then operated by him and a railroad freight car being propelled across a street in Waterloo by an engine of defendant-company. The case was tried to the court as there had been no demand for a jury. Rules 177, 178, R. C. P. Subsequent to the close of all the testimony and the overruling of defendant's motion for judgment, the trial court filed its written findings of fact and conclusions of law and therein held the defendant guilty of negligence and the plaintiff free from contributory negligence. It also found that the plaintiff had been damaged in the amount of $870.97. Thereafter, judgment for that amount was entered against the defendant. It has appealed.

The accident which has occasioned this litigation occurred on June 26, 1948, shortly after nine o'clock in the evening. The appellee was driving his car in a southwesterly direction on Concrete Street, also known as Eighteenth Street. This street crosses two switching tracks over which the appellant-company operates. On the evening in question the appellant-company, through its employees, was moving approximately ten freight cars in a northwesterly direction for the purpose of switching them into the Rath Packing Company grounds. The tracks of the appellant-company do not pass through the packing company grounds, and it is necessary to shove the cars into the grounds in order that they can be placed or spotted at desired points. There are .18 feet between the center of the rails of what has been termed the spur track and what has been referred to as the main line track. The spur track is the track farthest to the east. The space between the rails is four feet, eight and one-half inches. The spur track leaves the main line track approximately three or three and one-half car lengths east of Concrete Street. A freight car is between 40 and 50 feet long and consequently the spur would start at least 120 to 150 feet south and east of Concrete Street. At the time of the accident a string of freight cars was

standing on the spur track with the north end of these cars just off the southeast portion of the paved part of the street. The main line track curves east of Concrete Street and by reason of such curve the movement of any freight cars must be made by signals from the front of the moving car to the rear of the moving train or the engine. There were ten empty refrigerator cars being moved on the night in question.

It is the testimony of the appellee that he and his wife were sitting in the front seat of the car, that he was driving and the lights of the automobile were on high beam. The testimony on behalf of the appellee showed that they observed the string of cars on the first track as they approached from the east. At that time the automobile was moving at a speed of approximately eight to ten miles per hour. The appellee states that he did not observe anything on the second or main line track, but at the time he was crossing it the first refrigerator freight car hit the left side of his automobile and pushed it down the track about 16 feet and against a pole before the movement of the freight cars was stopped. The appellee further testified that he had looked up and down the tracks before proceeding across but did not observe the moving freight car which struck his automobile. It is shown that this railroad car was dirty yellow in color and the appellee maintains that there was no light on the end of the car. There was testimony to the effect that there was an electric street light a reasonable distance away but the exact location of it cannot be definitely determined from the evidence.

There is some testimony to the effect that a red lighted flare had been placed upon the refrigerator car which was being pushed across the street. The testimony on behalf of the appellee disputes this evidence and the court in its findings of fact held that the greater weight of the evidence shows that there was no such flare. The evidence does show that there was a brakeman on the head car, that there was another brakeman about the middle of the train, that the conductor was on the car nearest the switch engine and that the engineer who was operating the electric engine was in the cab of it. By reason of the fact that there was a curve in the tracks to the south and east of Concrete Street, the respective trainmen passed on their signals from one to the other until they reached the engineer. It was the finding

of the trial court, which was supported by the evidence, that the engine was some 400 feet or more from the first car and that at the time this movement of freight cars was being made the engine would be more than 400 feet from the crossing. The testimony on behalf of the appellant shows that the train came to a complete stop at Concrete Street, that the brakeman got off the car and went out into the street with his electric lighted lantern and at that time observed a car approaching from the east. He testified that it was his judgment that there was time for the train to pass the intersection and that he got back on the car and gave the signal to proceed across the street. At that time he observed the automobile near an inn or a near-by place of business. When the first freight car got to the middle of the street the brakeman testified that he observed that the automobile was not going to stop and he relayed a signal for an immediate stop. It was then that the collision occurred.

In connection with the claimed negligence of the appellant, the court found as follows:

"The brakeman attempted to act as a flagman at the crossing, but he did not do so. The testimony is that he got down off of the car, walked out onto the pavement at the intersection, looked both ways and did observe a car approaching, and instead of remaining on the pavement and using his lighted lantern to flag down the approaching car, he returned to the freight car, climbed up on top and gave his signal to proceed. It is apparent that this would take some little time, and it would also take some little time for the signals to be relayed to the engineer and before the engineer could get the engine started so as to proceed across the crossing. The time involved in doing this would be such that a car even travelling at a reasonable rate of speed, of ten or fifteen miles per hour, could go quite a little distance.

"The court, therefore, believes that the brakeman was negligent in this respect, and the negligence is imputed to the company, which is the defendant in this cause of action."

However, it is maintained by the appellant in its written brief and argument that the sole basis upon which its appeal is to be determined is the contributory negligence of the appellee. It is appellant's contention that the burden is upon the plaintiff to

plead and prove that he was free from contributory negligence and that by reason of the violation of the statute, relative to the headlights of the appellee's automobile, he was guilty of contributory negligence as a matter of law.

I.  The appellee was driving with what he termed his "town lights." His testimony on cross-examination concerning his lights, and upon which the appellant seeks to have this court hold as a matter of law that the appellee was guilty of contributory negligence, is as follows:

"* * * I was driving with the high beam lights. I can see the left side of the street with them on. They carry 8 feet beyond the edge of the left edge of the street. I can see 60 feet ahead in the country with my high lights. In town where there are not many lights I can see 10 or 15 feet ahead with my high beam lights. I would say this is a place where there are not many lights."

Section 321.413, 1946 Code, is as follows: "Mandatory requirement. All road-lighting beams shall be so aimed and of sufficient intensity to reveal a person or vehicle at a distance of at least one hundred feet ahead."

It is the appellant's contention that even admitting that it was guilty of negligence as found by the trial court, yet it maintains that the appellee was guilty of contributory negligence as a matter of law in respect to the lights, and the trial court should have so found.

We are therefore confronted with the question whether the claimed failure of the appellee to have proper lights was a contributing cause to the accident.

In the case of Napier v. Patterson, 198 Iowa 257, 264, 196 N.W. 73, 76, in commenting upon a somewhat similar case, we said:

"It must further appear that his illegal conduct contributed to the accident, to have this effect. Causal connection between the illegal conduct of the driver of the buggy and the collision and resulting injuries must be shown, to bar recovery upon the ground of contributory negligence. [Citing cases.]"

II.  We are concerned with the question whether there

was any causal connection with the damages received and the alleged contributory negligence of the appellee. The testimony of the appellee as bearing on this situation is, in part, as follows:

"There were 4 boxcars clear up to the pavement. There was no person in sight—no flagman. We got over the first track and hood (of the car) over the second before the car hit us and pushed us 16 feet up against the telephone pole. * * * When I approached the crossing I looked both ways and looked ahead and didn't see anything."

The record, in part, relative to the testimony of the appellee's wife, is as follows:

"Q. Do you mean that you were on the second set of tracks before the freight car came out into the street at all? * * * A. Certainly. Q. You were on the second set of tracks then before the freight car came into the street, is that right? A. Well, it was just as we was going on the second set of tracks. We had just started to go over the second set of tracks when it hit us. We weren't over it. Q. You mean you were just going onto the second set of tracks? A. Just going onto it when it hit us. Q. Couldn't you see it as it entered the street before it hit you? A. Why, no, we didn't see the car until it hit us."

Under the facts as noted in the testimony of the appellee and his wife, we have concluded that the trial court was justified in holding that the appellee was not guilty of contributory negligence as a matter of law. This holding finds support in the case of Lawson v. Fordyce, 234 Iowa 632, 641, 12 N.W.2d 301, 306, where we stated:

██ ██ "This court has held, times too numerous to name, that the issue of contributory negligence is ordinarily for the jury to determine. It has said that:

" 'It is the well settled rule of law in this state that if there is any evidence tending to establish plaintiff's freedom from contributory negligence, that question is one for the jury.' Huffman v. King, supra, 222 Iowa 150, 154, 268 N.W. 144, 147, citing many decisions of this court.

"See, also, Montanick v. McMillin, 225 Iowa 442, 448, 280 N.W. 608; Lathrop v. Knight, supra, 230 Iowa 272, 277, 297 N.W. 291; Pierce v. Dencker, 229 Iowa 479, 484, 294 N.W. 781. We have said that where reasonable minds may reasonably differ on the issue of contributory negligence it is for the jury. We have repeatedly held that:

" 'Proximate cause and contributory negligence are questions for the jury, save in very exceptional cases where the facts are so clear and undisputed, and the relation of cause and effect so apparent to every candid mind, that but one conclusion may be fairly drawn therefrom.' Fitter v. Iowa Telephone Co., 143 Iowa 689, 693, 121 N.W. 48, 50.

"See, also, McSpadden v. Axmear, 191 Iowa 547, 551, 181 N.W. 4; Roberts v. Hennessey, supra, 191 Iowa 86, 95, 181 N.W. 798; Huffman v. King, supra, 222 Iowa 150, 155, 268 N.W. 144; Carlson v. Meusberger, 200 Iowa 65, 72, 204 N.W. 432; Youngman v. Sloan, 225 Iowa 558, 560, 281 N.W. 130; In re Estate of Green, 224 Iowa 1268, 1274, 278 N.W. 285; Heacock v. Baule, 216 Iowa 311, 313, 249 N.W. 437, 93 A. L. R. 151; Vass v. Martin, supra, 209 Iowa 870, 874, 226 N.W. 920; Sexauer v. Dunlap, 207 Iowa 1018, 1021, 222 N.W. 420; Enfield v. Butler, 221 Iowa 615, 624, 264 N.W. 546; Gilbert v. Vanderwaal, 181 Iowa 685, 697, 165 N.W. 165."

It is our conclusion that if this case had been tried to a jury the trial court would have been justified in submitting the case to the jury. And so in this case where there was no jury, we have concluded that it was for the court to determine whether the appellee was guilty of contributory negligence that had a causal connection with the damages. We will not interpose our judgment on this fact question on appeal. Coble v. McChane, 233 Iowa 54, 57, 8 N.W.2d 755.

We find no basis for reversal and therefore affirm.— Affirmed.

OLIVER, C. J., and BLISS, GARFIELD, MANTZ, MULRONEY, HAYS, and THOMPSON, JJ., concur.