BEN JACOBSON, appellant, v. FLOYD R. ALDRICH, appellee.

No. 48670.

(Reported in 68 N.W.2d 733)

MARCH 8, 1955.

REHEARING DENIED JUNE 10, 1955.

Smith & Hanson, of Emmetsburg, for appellant.

Cory & Sackett, of Spencer, for appellee.

THOMPSON, J.—Plaintiff's appeal is from an adverse judgment rendered on a verdict directed by the trial court, at the close of plaintiff's evidence. His suit was for damages allegedly sustained by him in a collision between automobiles owned and driven by the respective parties plaintiff and defendant at the intersection of Seventh and Union Streets in Emmetsburg. The collision occurred on February 23, 1953, during the daylight hours. The plaintiff was thoroughly familiar with the intersection.

Immediately prior to the collision, the plaintiff was driving east on Seventh Street and the defendant was proceeding north on Union. The defendant therefore had the directional right of way, under section 321.319, Code of Iowa, 1950, the material part of which we quote:

"Where two vehicles are approaching on any public street or highway so that their paths will intersect and there is danger of collision, the vehicle approaching the other from the right shall have the right of way. * * *."

I. At the close of plaintiff's case in chief, defendant moved for a peremptory verdict by direction of the court, his motion being in eight numbered paragraphs. The result of all of them, however, was the contention that the plaintiff had failed to show his freedom from contributory negligence as a matter of law, and that he had failed to show any negligence of the defendant which was a proximate cause of the accident and injuries sustained. The court sustained the motion "as to each and every ground thereof." One of plaintiff's assigned errors is that the court should have ruled separately on each ground of the motion to direct. Authorities cited are In re Estate of Van Dyke, 245 Iowa 942, 65 N.W.2d 63, and Melsha v. Tribune Publishing Co., 243 Iowa 350, 51 N.W.2d 425. In neither of these did we actually reverse because of error arising

from the failure of the court to rule separately on each ground of the motion. There is warning language; it goes no further. Nor could we hold that error, if it be such, to rule generally on a motion instead of specifically on each ground, is present here. The court did rule on each ground. It could have made its ruling no more specific if it had referred to each ground by number; it said clearly that each ground was sustained. No one was left in doubt that the court had sustained each ground. Possibility of error arises when the court merely sustains a motion, without specifying whether upon all grounds or certain specific ones. There was no error at this point.

II. The court having sustained the motion upon all grounds, it remains to determine whether it was correct in its ruling. It is well settled that if any of the grounds of the motion were well taken, the court's ruling must be affirmed, even though it may have been mistaken in granting other grounds. Wentland v. Stewart, 236 Iowa 258, 261, 18 N.W.2d 305, 306. Since we agree that the motion was well taken upon the question of failure of the plaintiff to furnish substantial evidence of his freedom from contributory negligence, it will not be necessary to discuss or to determine the soundness of the ruling as applied to the other grounds. We must, however, go into the evidence at some detail for the purpose of pointing out why we have concluded plaintiff failed to carry the burden of producing evidence that no negligence on his part contributed to the accident and to his injuries.

III. It seems superfluous to repeat again the rule that when we are considering motions such as the one involved here the evidence must be given the most favorable interpretation for the plaintiff it will reasonably bear. There is also the principle, equally well settled in Iowa law, that the burden is upon the plaintiff to make an affirmative showing of his freedom from negligence which in any way contributed to his damage and injuries. Another rule often repeated is that ordinarily the question of contributory negligence is for the jury; it is only in "very exceptional cases" that a verdict may be directed because contributory negligence appears as a matter

of law. Fitter v. Iowa Telephone Co., 143 Iowa 689, 693, 121 N.W. 48, 50, Thompson v. Waterloo, Cedar Falls & Northern R. Co., 243 Iowa 73, 78, 79, 50 N.W.2d 363, 365, 366, Lawson v. Fordyce, 234 Iowa 632, 641, 12 N.W.2d 301, 306, and cases cited therein. We must examine the evidence adduced in the case at bar in the light of these rules and endeavor to make the proper application.

■ IV. Certainly the defendant had the directional right of way. This is not an absolute right, but relative. It is qualified by section 321.288, Code of Iowa, 1950, which so far as material says:

"The person operating a motor vehicle * * * shall have the same under control and shall reduce the speed to a reasonable and proper rate:
"* * *

"3. When approaching and traversing a crossing or intersection of public highways * * *."

■ There is additionally the duty of all parties to exercise reasonable care to keep a proper lookout at all times, particularly when approaching and traversing an intersection. As in all cases, this duty is in proportion to the danger reasonably to be anticipated.

■ Nevertheless, the directional right-of-way statute has meaning. It does not depend for its effect upon which car first entered the intersection, nor upon which car struck the other, nor at what point upon the car or in the intersection. The statute is intended to promote safety, to give motorists a guiding rule by which rights at intersections may be determined. It does not contemplate a race for the intersection; if at their respective distances and speeds the two cars approaching at right angles will collide it is the duty of the one on the left to give way.

Clearly the plaintiff did not yield the right of way to the defendant. The fact that a collision occurred proves that much. But it is plaintiff's major contention that at the time he looked to his right, which he says was a point about 50 feet west of the intersection, he did not see the defendant's car approach-

ing; and, by a considerably involved process of computation of distances and time, he attempts to show defendant must have been at that time so far away that in order to reach the intersection in time to collide with defendant's vehicle he necessarily traveled at a rate of speed in excess of 25 miles per hour, the maximum speed limit permitted by section 321.285, Code of Iowa, 1950. Reliance then is placed upon the principle that all travelers on the highways have a right to assume others using them will obey the law and the dictates of reasonable care. Hogan v. Nesbit, 216 Iowa 75, 82, 246 N.W. 270, 273. It is therefore reasoned there is substantial evidence of freedom from contributory negligence on the part of the plaintiff, since he says he looked and did not see and so defendant must have approached at an unlawful and perhaps unreasonable speed. Plaintiff by his argument attempts to place himself within the factual situations and so within the law enunciated in such cases as Hutchins v. LaBarre, 242 Iowa 515, 47 N.W.2d 269; Falt v. Krug, 239 Iowa 766, 32 N.W.2d 781; Rhinehart v. Shambaugh, 230 Iowa 788, 298 N.W. 876; and Lathrop v. Knight, 230 Iowa 272, 297 N.W. 291. Each of these cases turns upon the fact that the driver on the left as he approached the intersection testified he looked to his right for a considerable distance and saw no vehicle approaching. It was therefore concluded the car on the right must have traveled at an unlawful speed, or at least there was substantial evidence the jury could so find and could determine the left-hand driver was not guilty of contributory negligence.

He who looks to his right and sees no vehicle approaching within a distance which could be covered at a lawful and prudent speed so as to cause a collision at the intersection is not guilty of contributory negligence as a matter of law if he assumes there is no danger of such an accident. This rule applies also if he sees a car approaching on his right, but at such a distance a lawful speed would not bring it to the intersection in time to cause a collision. It is the rule of Hutchins v. LaBarre, supra, and the other cases relied upon by the plaintiff-appellant here.

But factually the case at bar is not in point with the cases

just referred to. It is true the defendant testified that he looked to his right when he was approximately 50 feet west of the intersection and could see all the way to the next intersection south and there was no car in sight. The weather was clear. There was some snow on the streets. Union Street is 26 feet wide, and Seventh Street 20.6, each between the curbs. They are residence streets. The plaintiff testified that at a point 50 feet west of the intersection, where he looked, he could see 300 feet to the next intersection. He was traveling at 15 miles per hour when he made his observation to the right, and saw no car approaching.

No claim is made that defendant's car was beyond, or south of, the next intersection south of Union and Seventh. It is plaintiff's theory that defendant was in the block immediately south of the intersection of these streets, but that plaintiff's view was obscured by a telephone pole located in the curb 50.2 feet west of the intersection, which might have aligned with some trees along the curb on Union Street or in the yard of the house on the southwest corner of the intersection so as to obscure the view of about 60 feet of the block of Union south from Seventh. This section would be immediately south from the alley in the middle of the block. The block is 330 feet long, so that 165 feet of Union Street north of the alley and extending to the intersection with Seventh would be visible even at the point where the pole obstructed vision to the southeast to some extent. The "blind spot", as described by Quentin Jameson, assistant county engineer of Palo Alto County, would commence on Seventh Street about 56 feet west of the intersection and would end at 50 feet. Farther west there would be a view of the whole block of Union south of the intersection and the same would be true at the 50-foot mark and on east until the intersection was reached. So the obstruction, if such there was, would interfere with a view of the entire block on Union only at the most for a distance of six feet, while the automobile was passing from a point about 56 feet west of the curbing to 50 feet west, on Seventh. As the witness Jameson said: "It would, more or less, have to be a fast glance for the telephone pole to bother a traveler very much." In fact, it would take about

one third of a second for an automobile driven at the speed testified to by plaintiff to pass the entire area of impaired visibility. But it is plaintiff's theory, urged upon us strenuously in argument, that defendant's car was somewhere between the alley in the middle of the block on Union Street and a point 60 feet south of the alley, when plaintiff looked; and that because of the obstruction of the telephone pole, aided to some extent by the aligned trees, he failed to see the defendant approaching. He cites Coonley v. Lowden, 234 Iowa 731, 12 N.W.2d 870, Shepherd v. Bremner, 220 Iowa 1, 260 N.W. 48, and Appleby v. Cass, 211 Iowa 1145, 234 N.W. 477, on the point that interference with visibility avoids the rule that the plaintiff must see what is plainly to be seen. From it all he deduces he was excused from seeing because of this "deceptive obstruction" which obscured his view for one third of a second as he passed it; and that defendant must have been more than 165 feet from the intersection when he was 50 feet away, and so must have traveled too fast, as was determined in Hutchins v. LaBarre, supra, and the other cases cited.

The theory is ingenious rather than sound. It meets its first obstacle in the testimony of the plaintiff himself. He said:

"I could see the crossing south on Union Street. I could see a whole block south. * * * I did not see the Aldrich car in that distance. It undoubtedly was there, but I didn't see it. It must have been there. * * * The Aldrich car must have been in that block somewhere, but I don't know where it was. * * * When I was at a point approximately 50 feet west of the west edge of the intersection, I could see 300 feet or more south to the intersection."

Later he said he supposed the reason why he could not have seen the Aldrich car no matter where it was in that block is that it would have been blocked out by some trees. But he further said:

"I looked to my right when I got to a point some 50 feet west of the west line of the intersection and from that point I could see 300 or more feet south of the intersection. I didn't see the Aldrich car. It must have been in the block. *I don't know why I missed seeing it.*" (Italics supplied.)

Later he said:

"I wouldn't know for sure whether a tree or something obstructed my view. I don't know what prevented my seeing it. * * * When I looked southward, I was about 50 feet west of the west curb line on Union Street. You can get a clear view for a block south on Union Street before reaching that point. * * * The weather was clear and I know of nothing to obstruct my vision."

On redirect examination, he testified:

"At the time of the accident, I didn't know a thing about anything bothering me or obstructing my view. * * * I never thought there was a thing to bother or obstruct my view. * * * When you look from the place where your view is obstructed, you can see a considerable stretch of the street. There is a considerable stretch of the street that is blocked."

He closed with this on re-cross-examination:

"Q. And you could see the whole street, couldn't you? A. Well, I thought I did. Q. And so when you did look you looked from a place you could see the entire length of the block south of Seventh Street on Union Street? A. I thought I could see it all. Q. And you did see the intersection south? A. I did see the intersection. Q. And, therefore, when you were answering Mr. Hanson's questions about a point where the view is obstructed by a pole and a tree which obstruct the view in the south part of the block, you didn't look from that point, did you? A. No. Q. You would look from a point beyond that where you could see farther south? A. That's right. Q. So that that obstruction didn't bother you any, did it? A. Well, I don't think so."

We pass the point whether a glance to the right lasting only one third of a second—the time required to pass the supposed obstruction—meets the test of keeping a proper lookout. The plaintiff's own testimony makes it apparent he was not bothered by the obstruction, if such there was. His final word was that he did not look south from the point of the obstruction, that he looked from a point beyond it where he could see farther south, and that he thought the obstruction did not bother him any.

There is also the important testimony of plaintiff's witness Laura Seleen. She lived in the house on the southeast corner of the intersection of Union and Seventh Streets. She was looking out a window facing Union Street immediately prior to the collision, and saw the defendant's car immediately in front of her house, and plaintiff's car coming east on Seventh Street at the same time. Plaintiff was, she thought, closer to the intersection. She placed defendant's speed at 25 miles per hour, "maybe some one way or the other." Plaintiff's car was going slower. The witness evidently watched the cars until the moment of the accident; at least she says she saw them collide. Her testimony makes it clear the defendant's car was in plain view of the plaintiff at all material times. It is a distinguishing factor from such cases as Hutchins v. LaBarre, supra, and others relied upon by plaintiff, in which there is no evidence the defendant's car was in fact in sight, and so the inference of unlawful speed was drawn. Here plaintiff's own witness makes it evident defendant's car was in fact at a point where it must have been clearly visible.

We are asked here to agree with plaintiff's theory that a jury question on freedom from contributory negligence is engendered by holding that a glance to the right covering one third of a second in time is a sufficient lookout; that when he looked he did not observe a telephone pole within a few feet which obstructed his view, nor that his view was in any way obstructed; to ignore his final statement that he did not look at the point of possible obstruction, but that he looked at a point "beyond that", and he did not think the obstruction bothered him any. There is no substantial evidence he was in any way deceived or his vision obscured by the "deceptive obstruction." To hold otherwise would be to ignore his own testimony and that of his witness Laura Seleen, who saw both vehicles approaching the intersection when the defendant's car was 60 feet away and the plaintiff's somewhat closer. The plaintiff's own testimony is commendably frank; but it destroys the theory that when he looked, as it was his duty to do, the defendant's automobile was not in sight and must have been

at such a distance it could not have reached the intersection at a legal rate of speed in time to cause a collision.

Many Iowa cases have dealt with this subject. Hewitt v. Ogle, 219 Iowa 46, 256 N.W. 755, is very close upon its facts. This court said (pages 49, 50 of 219 Iowa, page 756 of 256 N.W.) : "Under the undisputed evidence and the physical facts it appears that the defendants' car must have been in plain view on G street and not more than 175 feet south of the intersection at the time that plaintiff and decedent looked to the south. We are not here dealing with a case where either plaintiff or his decedent saw the defendants' car approaching and thought that they would have time to proceed through the intersection before it came in collision with them. The direct and positive testimony of the plaintiff is that both he and decedent looked and that neither of them saw the defendants' car. As has been said in cases involving similar situations, either the plaintiff and his decedent did not look, or, if they did look and did not see what was plainly in their view, they did not use ordinary care in looking."

To the same effect are Nurnburg v. Joyce, 232 Iowa 1244, 7 N.W.2d 786; Barboe v. Sioux City Service Co., 205 Iowa 1074, 215 N.W. 740; Sheridan v. Limbrecht, 205 Iowa 573, 218 N.W. 278; Kemmish v. McCoid, 193 Iowa 958, 185 N.W. 628, and many others. It was the plaintiff's duty to exercise reasonable care to keep a proper lookout for vehicles on his right, and if there were such approaching to be prepared to yield the right of way. Bannister v. Illinois Central R. Co., 199 Iowa 657, 202 N.W. 766.

In Shuck v. Keefe, 205 Iowa 365, 218 N.W. 31, there was substantial evidence that the car which came from the right was proceeding at a speed both unlawful and unreasonable, and so there was a jury question as to whether the driver on the left had a right to assume he could clear the intersection without danger of a collision. But we approved an instruction which stated the law as being that the party approaching a crossing and not having the right of way is required to exercise reasonable diligence to ascertain if another, with a superior right over the intersection, is approaching so that a collision

would be apt to occur. A failure to observe this precaution would of course be negligence.

In the case at bar, as we have pointed out, the plaintiff failed to show he had observed this rule. He admits the defendant's car must have been in the block, says he does not think the supposed obstruction bothered him, and that after looking he first slowed down his speed from 15 miles per hour to 11 or 12, and then speeded up as he entered the intersection. Add to this the testimony of his witness Laura Seleen, and the record shows affirmatively he both failed to exercise reasonable care to keep a proper lookout and to yield the right of way at the intersection.

V. The plaintiff also contends there was a diverting circumstance which excused his failure to see the defendant's approaching car, because the automobile was a light gray in color and the streets were "covered with snow." The record as to the amount of snow is not quite as counsel puts it. The plaintiff and the witness Seleen said there was "some snow" on the streets. How much snow there was is left uncertain. But from this factual basis counsel argue the color of the gray car, together with the white color of the houses along the east side of Union Street which were in the background of a view from Seventh Street west of the intersection, may have been a diverting circumstance or obstruction which would excuse plaintiff's failure to observe defendant's approach. At this point counsel relies upon Miller v. McCoy Truck Lines, Inc., 243 Iowa 483, 52 N.W.2d 62; Thompson v. Waterloo, Cedar Falls & Northern R. Co. and Appleby v. Cass, both supra; and Erickson v. Town of Manson, 180 Iowa 378, 160 N.W. 276. All of these except the last named were cases in which the accident occurred after night. In Miller v McCoy Truck Lines, Inc., supra, the defendant's truck was being turned around on the highway, and there was evidence its lights were in such a position as the plaintiff approached as to give the appearance of being lights of an oncoming car on its own side of the road. In the Thompson case, a string of freight cars, either lighted imperfectly or not at all, was being backed across the street, and the end car which struck the plaintiff's automobile was described as being of

a "dirty yellow" color. There was a row of freight cars also on the first track which plaintiff had to cross just before going upon the second track upon which he was struck. Appleby v. Cass, supra, showed that as plaintiff looked to his right he encountered a view of the lights of a bridge. Some emphasis is put upon the fact that the accident occurred at night. We said (page 1152 of 211 Iowa, page 480 of 234 N.W.) :

"In this case, the accident happened, not in the daytime, but in the night. The plaintiff testified that he looked northeasterly along Eleventh Street and could see the lights upon the bridge, 475 feet away. The very existence of these distant lights could have added some confusion to the visibility of intervening lights."

Kadlec v. Johnson Construction Co., 217 Iowa 299, 252 N.W. 103, also cited by plaintiff at this point, is again a case of an accident occurring after nightfall. The plaintiff had driven his car into an unlighted truck of the defendant parked without lights, reflectors or any other warning devices. The rear left side of the truck was only about two feet and four inches from the center of the pavement on the street. Some large maple trees overhung the pavement and cast shadows from the street lights upon it. It was held there were sufficient diverting circumstances to make a jury question as to plaintiff's freedom from contributory negligence. Erickson v. Town of Manson, supra, concerns a fall of the plaintiff over a guy wire attached to a telephone pole in the parking near her home. The wire is described by this court as a small single strand No. 9 or 10 wire, not easily seen. It was not of the kind ordinarily used for such purposes. Some near-by trees cast shadows which helped to obscure the view of the wire, and plaintiff did not know of its presence and had no reason to apprehend danger.

We find none of these cases to be factually in point. Whether the snow was of sufficient quantity to cover the streets or to cause interference with vision we are not told in the record; although counsel for plaintiff assert in argument it was. The plaintiff himself does not say anything interfered

with his vision. The day was clear, he was entirely familiar with the intersection, he does not think the supposed obstruction of the pole and trees interfered with his view, and we are left entirely without any reason except the argument of counsel to account for his failure to see defendant's car as it approached the intersection. He says frankly it must have been in the block and he does not know why he failed to see it. Nor do we; and we have no right to permit the jury to speculate. His commendable honesty perhaps deserves a better fate than the loss of his lawsuit; we can only hope that at some other time and place it will be suitably rewarded. We are constrained to hold the trial court was correct at least in that part of its ruling which found plaintiff had failed to furnish any substantial evidence of freedom from contributory negligence.—Affirmed.

All JUSTICES concur.