FRANK PETERSCHMIDT, appellant, v. CARL MENKE et ux.,
appellees.

No. 49377.

(Reported in 89 N.W.2d 152)

APRIL 9, 1958.

Napier & Fehseke, of Fort Madison, for appellant.

Pollard, Lawse & Deitchler, of Fort Madison, and Wilbur R. Dull, of Ottumwa, for appellees.

PETERSON, C. J.—This is the second appeal in this case. The first decision appears in 246 Iowa 722, 69 N.W.2d 65. It is an intersection collision case. The statement of facts, as to the collision and surrounding circumstances, appears in detail in our former opinion. We will not repeat the full statement. We will only show such of the facts as are pertinent to the new situation which has arisen in connection with this appeal.

At the first trial of the case Menke sued Peterschmidt for damages to his car. Peterschmidt filed counterclaim for damages to his pickup truck, but primarily for serious personal injuries suffered by him in the collision.

When Peterschmidt first filed his counterclaim he alleged in Count I specific charges of negligence against Mrs. Menke, the driver of the car, and Mr. Menke as owner, and alleged freedom from contributory negligence. In Count II he alleged he was entitled to the benefit of doctrine of last clear chance. At the close of all testimony the trial court withdrew Count I from the jury, but submitted the case under the allegations of Count II. The jury found in favor of Peterschmidt and Mr. and Mrs. Menke appealed. We reversed.

Before the second trial either Peterschmidt or his insurance company settled with Menke for the damages to his car. It was then agreed that the case should be tried the second time on the theory of Peterschmidt as plaintiff and Mr. and Mrs. Menke as defendants. Substantially the same evidence was offered in the second trial as in the first under the allegations of Count I of the petition as to specific negligence and freedom from contributory negligence. The doctrine of last clear chance did not enter into the second trial, in view of our previous decision. At the close of all testimony the court directed a verdict for defendants. Plaintiff has appealed.

Appellant alleges three assignments of error. 1. The trial court should have submitted to the jury the question of contributory negligence on the part of plaintiff. 2. The trial court should have submitted to the jury the question as to whether or not Mrs. Menke was guilty of negligence. 3. The trial court erred in excluding evidence as to damage to defendants' truck, and in refusing to admit a statement given by Mr. Menke as to the insurance company shortly after the collision.

I. To properly consider the ruling of the trial court in directing a verdict for defendants, a statement of part of the evidence offered in the second trial is necessary. Plaintiff was driving west on a gravel road. Defendant Mrs. Menke was driving south, also on a gravel road, in car owned by Carl Menke, her husband.

Plaintiff testified: "The width of the traveled portion of both the east-and-west and north-and-south roads at this intersection at the time of the collision was 24 feet. The width of the entire right-of-way of both roads, including the shoulders, ditches, and traveled portion was 66 feet. * * * I was traveling, I imagine, between 15 and 20 miles an hour. * * * I was proceeding west and I first looked to my right when I was about 60 feet east of the intersection. I continued to look to my right until I could look to my left, at which point I was approximately 20 feet east of the intersection. * * * I stopped looking to the north when I was 20 feet east of the intersection. From that point at the last time I looked to the north I had clear vision and could see the north-and-south road approximately 500 feet north of the intersection. At that point I saw no car approaching from the north. From that point, 20 feet east of the intersection, I looked to my left, to the south, to see if there was any cars coming from that way. I saw no cars coming or approaching from the south. I then drove on through the intersection. Q. Now, I will ask you to state whether, as you proceeded to the west, there was a collision between your truck and the car of Coletta Menke? A. After I was through the intersection. * * * My look to the north was at a point commencing about 60 feet east of this fence [the fence on east side of the north-and-south road] that I was talking about up to about 20 feet. * * * I slowed down before I entered the intersection but didn't stop

and I don't think I was going as fast as 20 miles an hour. Yesterday I said 15 * * * that is the speed I was going the last time I remember."

Mrs. Menke testified: "I approached this intersection at about 40 miles per hour; and as I got about 150 feet from the intersection I looked to the east and didn't see anyone. I also looked to the right and then looked back to the left or east again, and then I saw Peterschmidt's pickup truck. I took my foot off the accelerator. I first thought that he had seen me and would stop. I was about 75 feet from the center of the intersection when I first saw this truck. * * * The truck was coming from my left. I was on his right. * * * The truck came straight on through the intersection. I judge his speed as about 20 mph. The Peterschmidt truck entered the intersection without reducing his speed. When I saw that the Peterschmidt truck was not going to stop, I immediately slammed on my brakes and turned my car to the right to try to avoid an accident. I turned my car to the right about the same time as I applied my brakes. The truck came straight on through the intersection. The left front of my car collided with the right front of the Peterschmidt truck. * * * I saw Peterschmidt about a week later and he said he just didn't see me and he didn't know where I came from."

We have stated many times, and the rule is too well settled to need either discussion or extensive citations, that the evidence must be given the most favorable interpretation for the plaintiff it will reasonably bear. Odegard v. Gregerson, 234 Iowa 325, 12 N.W.2d 559; Comfort v. Continental Casualty Co., 239 Iowa 1206, 1208, 34 N.W.2d 588, 589; Jacobson v. Aldrich, 246 Iowa 1160, 68 N.W.2d 733, 735.

II. The first basis of the court's ruling in directing a verdict was contributory negligence of plaintiff as a matter of law. It is well settled that plaintiff has the burden of making an affirmative showing of his freedom from contributory negligence. Sanderson v. Chicago, M. & St. P. Ry. Co., 167 Iowa 90, 149 N.W. 188; In re Estate of Hill, 202 Iowa 1038, 208 N.W. 334, 210 N.W. 241; Nurnburg v. Joyce, 232 Iowa 1244, 7 N.W.2d 786; Jacobson v. Aldrich, supra. In the last cited case this court stated at page 1163 of 246 Iowa: "There is also the principle, equally well settled in Iowa law, that the burden is upon the

plaintiff to make an affirmative showing of his freedom from negligence which in any way contributed to his damage and injuries."

The question of contributory negligence is ordinarily for the jury. In the Jacobson case (pages 1163, 1164) we said: "Another rule often repeated is that ordinarily the question of contributory negligence is for the jury; it is only in 'very exceptional cases' that a verdict may be directed because contributory negligence appears as a matter of law. Fitter v. Iowa Telephone Co., 143 Iowa 689, 693, 121 N.W. 48, 50, Thompson v. Waterloo, Cedar Falls & Northern R. Co., 243 Iowa 73, 78, 79, 50 N.W.2d 363, 365, 366, Lawson v. Fordyce, 234 Iowa 632, 641, 12 N.W.2d 301, 306, and cases cited therein." The case at bar falls within the category of a "very exceptional case."

Mrs. Menke, approaching from plaintiff's right, had the right of way at the intersection. Section 321.319, 1954 Iowa Code. We are confronted with the oft-repeated situation that each case depends on its own state of facts. Appellant cites several cases bearing on the question of contributory negligence, but the citations are dissimilar as to facts and do not assist us in arriving at the answer.

There are two reasons why plaintiff was guilty of contributory negligence as a matter of law. There were physical facts present in connection with the collision which, in addition to the testimony of plaintiff and defendant, created a condition as to which reasonable minds would not differ.

The first situation as to contributory negligence on the part of plaintiff was created when he testified he looked to the north when 60 feet east of the east line of the north-and-south highway, and continued to look until he was 20 feet east of the line, and did not see Mrs. Menke approaching him. He stated he had a clear vision on a clear day 500 feet to the north. The physical facts, irrespective of oral testimony, show without question that at that particular time Mrs. Menke's automobile was within that range distance. According to her testimony she was between 125 and 150 feet north of the intersection. She testified she was traveling 40 to 45 miles per hour. This is not disputed except by conjecture of appellant's counsel. Plaintiff was traveling 15

to 20 miles per hour. Consequently, when he last looked she was about twice the distance he was from the intersection.

Under the statute it is the duty of the person coming from the left to look to the right to see if cars are approaching which have the right of way, and not only to look but in the exercise of reasonable care to see any approaching cars. The fact of the collision is positive proof that Mrs. Menke was within his range of vision. When he stopped looking north plaintiff was only between three and four seconds from the point of collision. Appellant's counsel urge the possibility of Mrs. Menke being over 500 feet away and still out of his sight. This was a physical impossibility. It means she would have to travel over 500 feet, or at between 175 and 200 miles per hour, while he was traveling 53 or 65 feet. As Mrs. Menke testified concerning her conversation with plaintiff, which statement was not denied by him, he said to her: "* * * he said he just didn't see me * * *."

We have considered this question in a number of cases. In Hewitt v. Ogle, 219 Iowa 46, 49, 50, 256 N.W. 755, 756, we said: "The direct and positive testimony of the plaintiff is that both he and decedent looked and that neither of them saw the defendants' car. As has been said in cases involving similar situations, either the plaintiff and his decedent did not look, or, if they did look and did not see what was plainly in their view, they did not use ordinary care in looking." This statement was quoted with approval in Jacobson v. Aldrich, supra. It is also supported in the following cases: Nurnburg v. Joyce, supra; Barboe v. Sioux City Service Co., 205 Iowa 1074, 215 N.W. 740; Sheridan v. Limbrecht, 205 Iowa 573, 218 N.W. 278.

The second reason why plaintiff was guilty of contributory negligence was that, according to his own testimony, he stopped looking to his right or to the north when he was 20 feet east of the east line of the north-and-south road. He testified that thereafter he looked to the south until the collision. There were 21 feet between the east side of the road and the traveled portion. Then there was either 12 feet or 24 feet in the traveled portion before the collision, depending on where the collision occurred. This means he traveled either 53 feet or 65 feet before Mrs. Menke's car struck his car. If he had been looking to his right, from which direction cars would be approaching having the right

of way, he could have stopped and avoided the collision. By the testimony of both plaintiff and Mrs. Menke he was not going over 20 miles an hour and he testified that as he entered the intersection he slowed down to 15 miles an hour.

With the tragic increase in automobile accidents and deaths of recent years, and the ever-mounting litigation arising therefrom, safety agencies have made careful study of the number of feet involved in stopping a car at certain rates of speed. One of the recognized agencies specializing in this study has been Northwestern University Traffic Institute at Evanston, Illinois. In this study they cooperate with the Traffic Division of the International Association of Chiefs of Police. In a manual issued jointly by these two agencies, a few years ago, it is stated at page 106: "Theoretically, a car with 100% of braking could be stopped from 20 m.p.h. in 13.3 feet. With 50% of braking, the braking distance from this speed would be 26.6 feet." We can assume plaintiff's brakes were in good condition, as there was no evidence to the contrary. But according to above quotation, even if they were not perfect, plaintiff still had ample time to stop if he had been looking in the right direction. Even the so-called reaction period of a split second, between what the eye suddenly sees and the foot striking the brake, would add only a few feet to above footage, at plaintiff's slow rate of travel.

It was plaintiff's duty to use lookout precaution as to cars coming from the right, and, if a car was approaching, to comply with the statute and yield the right of way. In Jacobson v. Aldrich, supra, at page 1170 of 246 Iowa, we said: "It was plaintiff's duty to exercise reasonable care to keep a proper lookout for vehicles on his right, and if there were such approaching to be prepared to yield the right of way. Bannister v. Illinois Central R. Co., 199 Iowa 657, 202 N.W. 766."

III. Since we are affirming on the basis of plaintiff's contributory negligence it is unnecessary to extend this opinion to consider the second and third assignment of error.

The judgment on order of trial court directing verdict for defendants is affirmed.—Affirmed.

All JUSTICES concur except SMITH, J., not sitting.