JOHN J. BUSSLER, Administrator of the Estate of MARY A. BUSSLER, Deceased, Appellant, v. CHICAGO, MILWAUKEE AND ST. PAUL RAILWAY COMPANY, Appellee.

**Railroads:** CROSSINGS: CONTRIBUTORY NEGLIGENCE: EVIDENCE. A railroad crossing is a known place of danger, and one approaching the same must use the senses of sight and hearing and exercise reasonable care commensurate with the risk involved to discover approaching trains and avoid injury. In the instant case the evidence is reviewed and held to show deceased guilty of contributory negligence.

**Same:** INSTINCT OF SELF PRESERVATION. The rule that because of the instinct of self preservation one is presumed to exercise due care to avoid his own injury does not apply where there are eye-witnesses, who testify as to the particular time of the accident and conduct of deceased. In the instant case testimony of eye-witnesses who saw deceased standing between the rails and looking in an opposite direction: that she remained there after the alarm was given and until the shadow of the passing tender hid her from view, but that she was observed by them immediately before she was struck, while not proving the actual collision, obviated the presumption of due care arising from the instinct of self preservation.

*Appeal from Dallas District Court.*—HON. J. H. APPLEGATE, Judge.

MONDAY, FEBRUARY 23, 1914.

ACTION for damages based upon negligence. From a verdict directed against him, the plaintiff appeals.—*Affirmed.*

*H. S. Dugan, Parsons & Mills,* and *T. M. Tiernan,* for appellant.

*Cook, Hughes & Sutherland,* and *White & Clarke,* for appellee.

WITHROW, J.—I. On the evening of November 5, 1912, Mary A. Bussler was killed on the tracks of the defendant company in the city of Perry, being struck by an engine. This action is brought by her administrator to recover damages resulting from her death, it being alleged that at the time the defendant company was negligent in failing to provide proper gates or guards at the place she was killed, such being a public crossing; in failing to have proper lights at the crossing; in failing to have proper lights or signals on the engine that ran over the deceased; in not having a pilot on the engine to see that the crossing was safe before allowing the engine to pass over it; in not having a flagman at the crossing; in allowing the engine and another engine and train to pass over the crossing at the same time; in not blowing the whistle or ringing the bell to attract the attention of deceased; in failing to see deceased upon its tracks; and in not stopping its engine after its employees saw, or should have seen, the peril of deceased. The defendant denied all negligence, and pleaded contributory negligence on the part of the deceased. There was a trial to a jury, and upon the conclusion of plaintiff's evidence a verdict was directed by the court in favor of the defendant, on the ground that decedent was guilty of contributory negligence, and from such the plaintiff appeals.

II. First street in the city of Perry is a much traveled thoroughfare. The line of the defendant company passes

through the city, crossing First street, and a short distance
west of the intersection of First street and the line of rail-
way is the station of the defendant. The business part of the
city of Perry is south of the railway, and largely east of
First street. North of the railway is a residence district,
and from it daily pass along First street and across the rail-
way a large number of people, estimated in the evidence to
be upwards of 1,000. It is shown by the evidence that the
decedent lived north of the railway, and that several times
during each week, in the discharge of her duties and in attend-
ing occasional social gatherings, she crossed the track at this
point. On the evening in question she was going from her
home to some place down in the city, it being at the time dark.
A passenger train of the defendant company had arrived from
the east, and, this being a division station, there was a change in
engines. The engine which brought the train into Perry first
moved westward after being detached from the cars, ran onto
a switch track, and was then being run or backed to the
roundhouse, moving to the east towards and finally over this
crossing at a rate of speed, according to different witnesses,
varying from four to six and eight miles an hour. On the
rear of the tender of the locomotive was a red light, which
could be seen for a considerable distance, and all witnesses
agreed that at the time the engine approached and passed
over the crossing the bell was ringing. The first that was seen
of Mrs. Bussler was when the engine was about twenty-five
feet away from her, moving at the rate of speed stated, and
she was standing on the sidewalk between the rails of the
track over which the engine was moving to the east. At the
time she was looking to the east, and, of course, did not see
its approach, as she faced the opposite direction. There is
evidence tending to show that at the time the westbound pas-
senger train was just moving out over or near the crossing
on another track, and also that there was the usual noise which
attends such movement, and also the noise of escaping steam
from the locomotive which killed the deceased. There were

some public lights at the depot, and one on a telegraph pole not far away, but witnesses are not certain that it was then burning, but it appears that the crossing was dark, and there was no moon. The deceased was forty-eight years old, and her health and eyesight were good.

C. F. Worrel, one of the witnesses for the appellant, testified:

At the time of the accident here in question, at First street in Perry, we were coming south on the east side of the street, and the first I noticed was a lady standing in between the rails and the engine backing up about the same time I saw her, and the train from the east was just pulling out. I yelled at the lady about three times, but she did not appear to hear me, and the engine passed over her. The engine was backing to the east when it struck her. She was standing where the sidewalk intersects with the north switch. She was standing still on the sidewalk and between the rails looking to the east, and the engine approached from the west. She stood still all the time that I saw her, and her face was toward the east. I was with Miss Peterson, and we were about twenty-five feet from the point where the roadway crosses the sidewalk. When the woman was struck the west-bound train was pulling out of Perry, and had not cleared the crossing; there being about two cars east of the crossing. I did not see the woman struck; there was a shadow from the tender, and I could not see her. The bell on the engine was ringing, and the red light was visible.

Miss Hazel Peterson, who was at the time with Worrel, testified:

When I first saw her she was standing on the sidewalk between the rails looking east; I saw her and the engine about the same time. I think the engine was about twenty feet from the woman when I first saw her. I did not see her move or change her position until she was struck. I did not see the engine strike her. She was facing east, so that her back then was toward the approaching engine. I heard the ringing of the bell on the approaching engine. She did not change her position in any way prior to the time she was struck. I did

not see her move. She remained there with her face toward the east and her back toward the approaching engine, and I saw her immediately before she was struck by the approaching engine. I noticed the woman and the engine about the same time. I heard the ringing of the bell of the approaching engine, and the red light was plainly visible.

P. J. Donovan, the engineer in charge, testified that he did not hear any one call, or see any one; that his head was outside the window of the cab, and he was looking in the direction they were going. From that position a person in the cab could not see the center of the track within one hundred feet; that at the rate of speed they were going the engine could have been stopped in from six to twenty feet.

Other witnesses testified, but their testimony has no direct bearing upon the immediate condition relevant to this appeal.

III. The only question raised by the appeal is whether decedent was, at the time, guilty of contributory negligence. In the trial below it was conceded that the rule of the last clear chance was without application under the facts, and the ruling of the trial court rested upon the single proposition: A railroad crossing is a known place of danger. A person approaching it is bound to exercise reasonable care to discover the approach of trains and avoid injury, and to use the senses of sight and hearing. When, as here, it is known to be a place over which many trains pass, the degree of care required must be commensurate with the added hazard. The evidence is without dispute that, immediately preceding her death, Mrs. Bussler was seen standing between the rails, facing in a direction opposite to that from which the engine was moving down upon her, and but twenty feet away from it. The crossing was not a new one to her, as she frequently passed over the track at this place, and was familiar with the surroundings. Had she, at the time, looked in the direction from which the engine was approaching, she could have seen it in time to have avoided injury, for it is

1. RAILROADS: crossings: contributory negligence: evidence.

undisputed that others saw it for a greater distance than she was from it, and that its rate of speed was such that she could then have avoided the injury. From these facts, and assuming that she was seen up to the moment of her death, there was full warrant for the finding that she was negligent at the time. *Tierney v. C. & N. Ry. Co.*, 84 Iowa, 641; *Beem v. Tama & T. Ry. Co.*, 104 Iowa, 564; *Swanger v. Ry. Co.*, 132 Iowa, 32.

IV. What we have thus far said has been upon the assumption that the evidence without conflict shows the position and acts of the decedent up to the time of her death. It is the claim of the appellant that there is no direct evidence as to the immediate time, and that there arises the presumption in the case that, because of the instinct of self-preservation she was exercising due care to avoid injury, and, this presumption existing, there was such a showing in the record as required the submission of the cause to the jury. The rule which recognizes such a presumption as proper to be considered is without application when there are eyewitnesses who testify as to the particular time and conduct. *Wilson v. Ill. Cent. Ry.*, 150 Iowa, 33; *Golinvaux v. Railway Co.*, 125 Iowa, 656; *Ames v. Railway Co.*, 120 Iowa, 647. In the present case while the only witnesses to the accident testify that they did not see the engine strike her, both state that they saw her standing between the rails, looking in the opposite direction, and that when and after thus seeing her alarm calls were given, but she remained in that position until the shadow of the tender hid her from view, but that she was observed by them there immediately before she was struck. This evidence falls short only of proving the actual collision, but it carries the narrative of fact up to that point of time when, did such instinct of self-preservation assert itself, it was too late to save her from the results of a condition in which her own negligence had placed her. *Thompson v. C. G. W. Ry. Co.*, 162 Iowa, 468; *Stark v. Tabor & N. Ry. Co.*, 161 Iowa, 393.

2. SAME: instinct of self preservation.

We hold that the trial court ruled correctly in directing a verdict for the defendant, and its judgment is—*Affirmed.*

LADD, C. J., and DEEMER and GAYNOR, JJ., concur.