FLOYD HAMILTON, administrator of estate of Dean L. Hamilton, deceased, appellant, v. CLARENCE BECKER, appellee.

No. 49256.

(Reported in 86 N.W.2d 142)

November 12, 1957.

Rehearing Denied January 17, 1958.

Larson & Carr, of Charles City, for appellant.

Zastrow, Noah & Smith, of Charles City, and Brown, Dresser & Kinsey, of Mason City, for appellee.

HAYS, C. J.—Action for damages by decedent's administrator for defendant's alleged negligence in the operation of his automobile. The jury returned a verdict for the defendant and plaintiff appeals.

The death occurred after dark on the evening of March 23, 1956. Decedent left the town of Bassett, Iowa, in a pickup truck loaded with wood, about six p.m., headed west toward Charles City where he lived. There was snow on the ground, but Highway 18 was clear. It appears that the pickup truck had gone into the ditch on the south side of the road and that decedent started walking west on the north shoulder of Highway 18, toward Charles City. He was struck and killed by a car being driven by defendant.

Appellant assigns nine alleged errors which may be grouped and considered under three divisions. A more detailed statement of facts, as they bear upon the respective assigned errors, hereinafter is made.

I. Appellant requested an instruction giving his decedent the benefit of the no-eyewitness rule, which was refused by the trial court, and also excepted to the failure of the court to instruct thereon, and error is thus assigned.

█ █ The no-eyewitness rule is well established and has been applied in many instances. The rule is that in the absence of eyewitnesses it is proper for the jury to consider the instincts of men, which naturally lead them to avoid danger, as evidence of due care on the part of the person injured. Hopkinson v. Knapp & Spalding Co., 92 Iowa 328, 60 N.W. 653; Hittle v. Jones, 217 Iowa 598, 250 N.W. 689; Graby v. Danner, 236 Iowa 700, 18 N.W.2d 595. The rule itself is clear but in applying it the courts are frequently confronted with a perplexing question. Black's Law Dictionary defines an eyewitness to be

"A person who could testify as to what he had seen." Hayes v. Stunkard, 233 Iowa 582, 589, 10 N.W.2d 19, 22, states: "The eyewitnesses whose testimony will defeat the presumption must be persons who, from their observation, are able to say what the deceased did or did not do in the observance of due care for his own safety." In Hittle v. Jones, 217 Iowa 598, 601, 250 N.W. 689, 691, it is stated: "Nevertheless, if the witnesses who attempt to describe decedent's actions in a case of this kind did not see him during all the material moments of his actions, the inference of due care may be drawn under the rule relating to the instinct of self-preservation." See also Hackman v. Beckwith, 245 Iowa 791, 64 N.W.2d 275.

■ It appears without contradiction in the record that the appellee had but a fleeting glimpse of decedent before his car hit him. He testified: "I never did see Hamilton on the north shoulder, just when he jumped in front of me. I saw him when he jumped, that is right. He jumped from the shoulder onto the pavement in front of my car. That is the only time I saw him. He was probably forty-five feet away from the car when he jumped." As a minimum, appellee was driving at fifty miles per hour. Under the rule applied in Hittle v. Jones, 217 Iowa 598, 250 N.W. 689; Davidson v. Vast, 233 Iowa 534, 10 N.W.2d 12; Hayes v. Stunkard, 233 Iowa 582, 10 N.W.2d 19; and Hackman v. Beckwith, 245 Iowa 791, 64 N.W.2d 275, where the time element is very similar, appellee was not such a witness as would prevent the rule applying.

■ Just prior to the accident a car came from the east, with two men in it. They both testified that they saw the pickup in the ditch on the south side. They saw decedent walking west on the north shoulder. They proceeded west a short distance, then turned around and started back east, intending to give decedent a ride into Charles City. As they went back they did not see anyone on the shoulder. The appellee's car was approaching from the east. Both cars had their headlights on; that up to the time they passed this car the pavement between them was clear. They had just passed appellee's car when they heard a thump. They stopped at once and went back to where decedent's body was on the pavement. No claim is made that they saw the accident.

One Lowell Knapp also testified as to the accident and it is his testimony which, according to appellee, eliminates the no-eyewitness rule. Knapp was driving east at the scene of the accident. He saw a man walking west on the north shoulder and further on observed the pickup in the ditch. After proceeding east a short distance, he stopped, backed his car onto the south shoulder near the pickup and got out. He started walking west on the south side and called to the man on the north shoulder who was still walking west and about a block ahead of him. It was at this time that the two cars above mentioned were approaching each other. He stated that the lights of the car coming from the west blinded him for a moment but saw the man on the shoulder again when the appellee's car approached. The record is:

"Q. Did he step in front of the Becker car? A. Seemed to. Q. Just tell us what you saw this man do. A. Well, there was a pause there in that I didn't notice the man. Q. And did you see him again after that? A. And until the two cars, the car arriving from the east, and before he had been hit with the car is when I noticed him step out to the highway from the north on the shoulder. He seemed to step in the path of the Becker car. Q. Now, Mr. Knapp, this pause which you referred to in which you lost sight of this man walking on the north shoulder, would you tell us whether or not that was just the interval that the lights of the car coming from the west was in your eyes? A. Yes. Q. Mr. Knapp, your observations as to these cars passing each other, of course they were made, were they not, from where you were standing east on that south shoulder, is that not right? These cars were meeting each other some distance west of you, isn't that right? The Becker car and the car coming from the west? A. Yes."

Under the record, as above set forth, if the jury believed the testimony of the two men in the car that passed appellee just at the time decedent was hit, with witness Knapp at a point a block west of the place of impact, what Knapp was able to see would be problematical. If the jury accepted Knapp's version as to the location of the cars, it is clear that his view was

only for an instant. In fact, his testimony is similar to appellee's, i.e., "he seemed to step into the path of the car." Under the record and the authorities above cited, we think it was a question for the jury whether there was an eyewitness, and, if not, that he be given the benefit of the no-eyewitness presumption. See also Riedesel v. Koch, 241 Iowa 1313, 45 N.W.2d 225; Hackman v. Beckwith, 245 Iowa 791, 64 N.W.2d 275. The failure of the court to so instruct was prejudicial error.

II. Error is also predicated upon the admission of certain testimony relative to a blood test bearing upon the question as to decedent being intoxicated at the time he was struck and killed.

The record, generally, as it bears upon this issue is as follows: About seven-thirty p.m., Floyd Carver, an officer of the Highway Patrol, was summoned by radio to the scene of the accident. He stated the coroner or deputy coroner was present. The body was taken to a funeral home. A doctor was called by the coroner to obtain a sample of blood from the body for the purpose of an alcohol test. He experienced some difficulty in getting a sample, and it was later obtained by the mortician when he was preparing the body for burial. This sample was given to a local police officer, who delivered it to Patrolman Carver, who took it to Waverly where it was delivered to a chemist, Dr. A. W. Swenson. Swenson testified at the trial as to the alcohol content of the blood.

Appellant assigns three specific propositions on this issue: (1) No proper foundation for the admission of Doctor Swenson's testimony. (2) The testimony relative to the taking of the blood test violated section 321.271, Code, 1954. (3) Said testimony is an invasion of the right of privacy and contrary to section 8, Article I, Constitution of Iowa, and to the Fourth Amendment to the United States Constitution.

As to the objection that no foundation was laid for the admission of Doctor Swenson's testimony, this deals with the identification of the blood sample from the mortician to the chemist. We find no error.

A different and more perplexing question is presented by the second proposition, i.e., a violation of section 321.271, Code, 1954. Section 321.266, Code, 1954 (all statutes mentioned are

in the 1954 Code unless otherwise stated), requires that every law officer, who in the course of his duty investigates a motor-vehicle accident, must file a written report with the State Department of Public Safety. Section 321.269 requires the coroner to file with the department a report as to any death resulting from a motor-vehicle accident. Section 321.271 provides as follows:

"All accident reports shall be in writing and the written report shall be without prejudice to the individual so reporting *and shall be for the confidential use of the department,* except that upon the request of any person involved in an accident, or the attorney for such person, the department shall disclose the identity of the person involved in an accident and his address. *A written report filed with the department shall not be admissible in or used in evidence in any civil case arising out of the facts on which the report is based."* (Italics added.)

This section has been before this court many times. In McBride v. Stewart, 227 Iowa 1273, 1277, 290 N.W. 700, 702, testimony of one who overheard a party reporting to an officer was held to be inadmissible. We there said: "Under this statute the report was to be without prejudice to defendant. It was not to be used as evidence in any trial, civil or criminal, growing out of the accident. But it would have been so used had not the objection been sustained." Vandell v. Roewe, 232 Iowa 896, 6 N.W.2d 295, was an action by an administrator for the death of his decedent. His attempt to question a patrolman as to statements made to him by the defendant, at the time the officer was investigating the accident, was denied under the statute. In Sprague v. Brodus, 245 Iowa 90, 94, 60 N.W.2d 850, 853, it is said: "The manifest design of the legislature is to enable the government to secure statistical data, under the seal of confidence, that is not to be broken in private litigation." In Ehrhardt v. Ruan Transport Corp., 245 Iowa 193, 203, 61 N.W.2d 696, 702, we find: "Information given an officer for the purpose of making his written report is a report and the report referred to in the statute." See also Goodman v. Gonse, 247 Iowa 1091, 76 N.W.2d 873; Annotation, 165 A. L. R. 1302. The gist of the above authorities is that the so-called immunity

is not personal alone but also public; that the interest of the State in obtaining this data for use in its safety-administrative activities justifies the subordination of the interests of private litigants.

Turning now to the instant case. We think a fair analysis leads to the conclusion that the taking of the sample of blood from decedent's body was done either at the request of the deputy or acting coroner, who did not appear as a witness, or at the request of the highway patrolman, who was a rather evasive witness and was unable to remember whether or not he requested that a sample be taken. Be that as it may, it seems clear that such sample and analysis was for the benefit of the Department of Public Safety and should be as confidential as it would have been had the decedent been merely injured, instead of killed, and had been requested by the officers to submit to a blood test, to which he consented.

Appellee seeks to eliminate this section 321.271 by asserting there is no evidence that the patrolman or investigating officer authorized or gave any direction for the blood test. His own witness, Dr. H. A. Tolliver, stated the coroner requested the sample. The patrolman was without question acting in an official position in his part of the proceedings. To hold otherwise is to say that both officials, the coroner and the patrolman, were using the badge of their office to further the interests of a litigant in a private law action. This we are not prepared to do. Appellee further states that the section does not apply, even if taken under the express direction of the patrolman, as it is part of the physical evidence obtained from the accident scene to which the investigating officer has always been permitted to testify, citing Bachelder v. Woodside, 233 Iowa 967, 9 N.W.2d 464; Goodman v. Gonse, 247 Iowa 1091, 76 N.W.2d 873. We are unable to find any similarity between the cited cases and the instant situation. It is our judgment that this blood test forms a part of the report made pursuant to section 321.266, and is confidential to the department, under section 321.271. We think the objection should have been sustained and failure to do so constitutes prejudicial error.

While appellant has assigned other alleged errors, after an

examination thereof we do not deem it necessary to comment thereon.

For the reasons above stated the judgment of the trial court should be and is reversed.—Reversed and remanded.

BLISS, WENNERSTRUM, SMITH, LARSON, and PETERSON, JJ., concur.

GARFIELD and THOMPSON, JJ., dissent.

OLIVER, J., dissents as to Division II.