LOUELLA LINGLE, administratrix of estate of Cloyd C. Lingle, deceased, appellant, v. MINNEAPOLIS AND ST. LOUIS RAILWAY COMPANY, a corporation, and HARRY E. RAMLER, appellees.

No. 50014.

(Reported in 104 N.W.2d 467)

1184

AUGUST 2, 1960.

Leonard & Branco, of Holstein, and Rider, Bastian & Beisser and Alan Loth, all of Fort Dodge, for appellant.

Lundy, Butler & Wilson, of Eldora, for appellees.

GARFIELD, J.—This is a law action against defendant railway and the engineer of a two-car passenger train to recover for death of plaintiff's decedent when his cattle truck collided with the side of the train at a country grade crossing in daylight. Trial resulted in jury verdict against the railway but in favor of the engineer. The trial court sustained the railway's motion for judgment in its favor notwithstanding the verdict. From judgment on the ruling plaintiff has appealed.

Plaintiff concedes she presented no evidence of her decedent's freedom from contributory negligence but contends she had the benefit of the no-eyewitness rule. The trial court held the rule was not applicable because, as he thought, defendant engineer was an eyewitness to the conduct of the driver of the truck

during the material moments just before the collision and also the rule was negatived by the facts and circumstances in evidence. Upon these two grounds the jury verdict was set aside.

Plaintiff's decedent and his employee, Vernie Bochmann, were in the truck when it collided with the train at its crossing of paved Highway 175, 4861 feet south of the railway station at Gowrie. Both were killed. The truck, a tractor-trailer loaded with cattle bound for Chicago, was going east, the train south. It consisted of an engine and one coach with combined length of about 163 feet. The truck collided with the side of the train near its center at the front of the coach which was damaged and derailed. There is no direct evidence as to whether plaintiff's decedent, Lingle, or his employee, Bochmann, was driving the truck. Such inferences as may be drawn from the testimony point to Lingle as driver.

On the west side of the railroad track—the side from which the truck approached—there is an embankment about 1600 feet long extending north from a point about 135 feet north of the highway. At this point the embankment is 2.9 feet above the top of the rails. At 200 feet north of the highway this height is 6.7 feet and at 250 feet 9.7 feet. Highest point of the embankment is 350 feet north of Highway 175. It is there 13.7 feet higher than the highway at the crossing. The engine was 15 feet 8 inches and the coach 13 feet 7 inches high. The highway is about level. It is apparent the higher part of the embankment obstructs the view an eastbound motorist has of such a coach and all except the top part of such an engine while in the deeper part of the cut.

█ Of course upon this appeal we must view the evidence in the light most favorable to plaintiff. Beezley v. Kleinholtz, 251 Iowa 133, 135, 100 N.W.2d 105, 107.

Defendant engineer Ramler testifies he first saw the truck when he was about 1800 to 2000 feet north of the crossing; the truck was then about three-fourths mile west of the crossing; the train was traveling "about 20 to 25 miles an hour" (it was however 2½ hours behind schedule); after his first view of the truck the embankment prevented his seeing it again until he was 223 feet north of the crossing; the truck was then 595 feet

west of the crossing; it was coming right along, about the usual speed a truck would be traveling; he did not see any attempt to stop the truck; he could not see who was driving it. He estimates the speed of the truck at about 50 miles per hour and says he did not see it slow down. Also that he sounded the whistle and rang the bell as he approached the crossing. The engineer testifies:

"Q. Where did you first realize there was going to be a collision? A. I didn't realize there was going to be any collision. I thought I was over the crossing and safe.

"Q. Did you think the truck was going to pass behind you? A. No.

"Q. Did you think it was going to stop? A. Yes. * * *

"Q. Why did you think you were safe, that no collision was going to occur, after you had crossed Highway 175? A. You would naturally think a vehicle coming toward the side of a train would stop.

"Q. Didn't you see the truck immediately prior to the accident * * * didn't you keep your eyes on it? A. No, after I got on the highway I looked straight at the truck and I never looked at it anymore. It was back 150 feet or such a matter.

"Q. The truck was west of your engine 150 feet when your engine was on the highway crossing? A. Yes."

Thus the engineer says he did not see the truck while it traveled the last 150 feet.

█ I. The no-eyewitness rule is that where there is no eyewitness and no obtainable direct evidence as to what a decedent did or failed to do by way of precaution at and immediately before the time he was injured there is an inference he was in the exercise of ordinary care for his own safety. Riedesel v. Koch, 241 Iowa 1313, 1316, 1317, 45 N.W.2d 225, 228, and citations; Smith v. Darling & Co., 244 Iowa 133, 140, 56 N.W.2d 47, 51, and citations; Ruble v. Carr, 244 Iowa 990, 995, 59 N.W.2d 228, 231, 232.

█ If the witness who attempts to describe decedent's actions did not see him during all the material moments preceding the injury he is not such an eyewitness as to deprive decedent's estate of the benefit of the inference of care above referred to.

Hittle v. Jones, 217 Iowa 598, 601, 250 N.W. 689, 691, and citations; Hayes v. Stunkard, 233 Iowa 582, 589, 10 N.W.2d 19, 22; Graby v. Danner, 236 Iowa 700, 707, 18 N.W.2d 595, 598; Hamilton v. Becker, 249 Iowa 516, 519, 86 N.W.2d 142, 144; Van Wie v. United States, N.D. Iowa (Judge Graven), 77 F. Supp. 22, 41.

The trial court instructed the jury with reference to the no-eyewitness rule and left to its determination the question whether there was an eyewitness to decedent's conduct during the material moments just before the collision. The instruction is in accord with a number of our precedents provided of course the evidence warranted a finding there was no such eyewitness. Hackman v. Beckwith, 245 Iowa 791, 64 N.W.2d 275; Hamilton v. Becker and Riedesel v. Koch, both supra; Low v. Ford Hopkins Co., 231 Iowa 251, 253, 254, 1 N.W.2d 95, 97; Platter v. Minneapolis & St. L. R. Co., 162 Iowa 142, 157, 143 N.W. 992.

As before indicated, the court later ruled the engineer was, as a matter of law, an eyewitness to decedent's conduct during the material moments and also that the no-eyewitness rule was negatived by the facts and circumstances. It was the court's view that the time when the occupants of the truck were not under observation—the last 150 feet of travel—did not constitute material moments because the collision could not then be avoided.

We have never attempted to say just what is meant by "material moments preceding an injury" as applied to all cases and do not do so now. It is doubtless true, as Judge Graven observes in Van Wie v. United States, supra, N.D.Iowa, 77 F. Supp. 22, 42, that what are such material moments varies with the conditions and circumstances of a particular case. We are reluctant to hold that the moments during which this truck traveled the last 150 feet before striking the train were not, as a matter of law, material moments. If the engineer or other witness testified to decedent's conduct during these final moments certainly no one could seriously contend they were not material. They are no less material merely because the evidence is silent as to this interval. However, as we shall attempt to

explain, it is not of controlling importance whether the last 150 feet of travel were so-called material moments.

We do hold there is no inference that, due to the instinct of self-preservation, decedent exercised ordinary care for his own safety during the time the engineer observed the truck and its occupants travel between points from 595 feet to 150 feet respectively, west of the crossing. Decedent's conduct during this period must be judged from the evidence, not by considering an inference that might have arisen from a lack of obtainable direct evidence as to these moments.

■ Mast v. Illinois Central R. Co., N.D. Iowa (Judge Graven), 79 F.Supp. 149, 162 (Affirmed 8 Cir., 176 F.2d 157), cites many Iowa decisions for the proposition that the inference arising from the no-eyewitness rule does not apply to moments covered by direct evidence. See Gray v. Chicago, R. I. & P. R. Co., 160 Iowa 1, 15, 139 N.W. 934; Bussler v. Chicago, M. & St. P. R. Co., 165 Iowa 361, 366, 145 N.W. 533; Merchants Transfer & Storage Co. v. Chicago, R. I. & P. R. Co., 170 Iowa 378, 394–396, 150 N.W. 720.

■ II. We have referred to the lack of direct evidence as to whether plaintiff's decedent or his employee, Bochmann, was driving the truck. We may as well say at this point we think it is unimportant which of them was the driver. The only reasonable conclusion from the evidence is that if it was Bochmann he was acting within the scope of his employment and, we may add, that decedent had the right to control the operation of the truck. Any negligence of Bochmann in driving the truck would therefore be imputed to his employer. Restatement Agency, Second, section 317, see comment a, illustration 1; 5A Am. Jur., Automobiles and Highway Traffic, section 818; 65 C. J. S., Negligence, section 168i, page 831. See also Stuart v. Pilgrim, 247 Iowa 709, 713, 74 N.W.2d 212, 215; Cubbage v. Roos, 181 S.C. 188, 186 S.E. 794, 798.

■ III. The vital question on this appeal is whether plaintiff was entitled to go to the jury on the issue of freedom of her decedent from contributory negligence. As a rule the inference of due care arising from application of the no-eyewitness rule is sufficient to carry such issue to the jury. Many decisions to

this effect are cited in Mast v. Illinois Central R. Co., supra, 79 F. Supp. 149, 166. See also Article by Bruce M. Snell, Jr., 43 Iowa Law Review 57, 63; Plumb v. Minneapolis & St. L. Ry. Co., 249 Iowa 1187, 1194, 91 N.W.2d 380, 385.

However, this is not always true. The inference arising from the no-eyewitness rule may be negatived by the facts and circumstances shown and, sometimes, conclusively. These are among decisions that there was contributory negligence as a matter of law although plaintiff was entitled at the outset to the benefit of the no-eyewitness rule: Hittle v. Jones, 217 Iowa 598, 602, 250 N.W. 689; Van Gorden v. City of Fort Dodge, 216 Iowa 209, 245 N.W. 736; Tegtmeyer v. Byram, 204 Iowa 1169, 216 N.W. 613; Wasson v. Illinois Central R. Co., 203 Iowa 705, 213 N.W. 388; Lambrakis v. Chicago, R. I. & P. Ry. Co., 198 Iowa 641, 199 N.W. 994; Sohl v. Chicago, R. I. & P. R. Co., 183 Iowa 616, 167 N.W. 529; Oaks v. Chicago, R. I. & P. R. Co., 174 Iowa 648, 156 N. W. 740. See Ruble v. Carr, supra, 244 Iowa 990, 997, 59 N.W.2d 228, 232.

Without reviewing these cases, we may say they fully support the result reached by the trial court here.

■ There is another principle recognized by our precedents we think is applicable here. It is in substance that absence of direct testimony of decedent's conduct at the very time of an accident will not support a finding of freedom from contributory negligence if it was then too late to save him from the results of a condition in which his own negligence had placed him. Thompson v. Chicago, G. W. R. Co., 162 Iowa 468, 473, 142 N.W. 223; Bussler v. Chicago, M. & St. P. R. Co., supra, 165 Iowa 361, 366, 145 N.W. 533; Merchants Transfer & Storage Co. v. Chicago, R. I. & P. R. Co., supra, 170 Iowa 378, 394, 395, 150 N.W. 720. See also Mast v. Illinois Central R. Co., supra, 79 F. Supp. 149, 167.

The effect of the trial court's conclusion that the last 150 feet the truck traveled were not "material moments" because the collision could not then be avoided was an application of the principle just stated.

■ It is our holding that absence of direct evidence of decedent's conduct during the final moments preceding the col-

lision was insufficient to raise a jury question on the issue of freedom from contributory negligence in view of the direct evidence of his conduct, indicating a lack of care, down to this interval, and the facts and circumstances shown.

IV. Further reference to the evidence on which we rest our holding seems desirable.

Decedent was a trucker of long experience with at least some familiarity with this crossing. The embankment previously mentioned furnished the only obstruction to view. From the time the train emerged therefrom it was in plain sight. There was then ample opportunity for the occupants of the truck, in the exercise of ordinary care, to avoid the collision. About half the train had actually crossed the highway before it was struck. There is no evidence the statutory warning signals were not given. The testimony is to the contrary. The horn on the engine was blown continuously from the time the engineer saw the truck the second time and the bell ringer was then turned on. Before then the regulation crossing signal had been sounded.

(The charges of negligence against the railway which were submitted to the jury were failure to provide a flagman or automatic warning signal and excessive speed of the train. The verdict in favor of the engineer was evidently based on a finding the speed was not excessive or, if excessive, that it was not a proximate cause of the tragedy. As stated, the train was going only 20 to 25 miles per hour.)

In addition to warning signals from the train there was a standard highway approach warning sign 600 feet west of the crossing and the familiar crossarm sign on each side of the crossing. There was no diverting circumstance. Weather and roadway were normal. No skidmarks were found upon the highway nor is there other evidence of an attempt to stop the truck or otherwise avoid the collision. There is affirmative proof the truck did not slow down while the engineer watched it. (Incidentally plaintiff, doubtless from necessity, offered the testimony of the engineer as her witness.)

A witness for plaintiff testifies stopping distance of a similar truck fully loaded was 300 to 350 feet—twice the distance the truck traveled after the engineer stopped watching it.

Of course if, as the engineer says, speed of the truck was 50 miles an hour, stopping distance would be greater. There is no evidence speed of the truck could have been diminished during this final period so it would have passed to the rear of the train. The truck collided with the train with considerable force, evidently while traveling at a fairly rapid speed, in view of the damage to the coach and tipping of the train.

Upon the whole case the only reasonable conclusion to be drawn is that the truck was heedlessly driven into the side of the train in daylight.

The most favorable testimony for plaintiff seems to be the engineer's statement, before referred to, that he did not realize there was going to be a collision and thought the truck was going to stop. This belief which proved to be mistaken was apparently based on the plausible idea "You would naturally think a vehicle coming toward the side of a train would stop." We are not prepared to dispute this assertion under the facts and circumstances here.

█ V. We desire to correct a misconception the railway has pressed upon us—that before the no-eyewitness rule applies it must be *conclusively* established there is no obtainable direct evidence of what decedent did just prior to his injury. Low v. Ford Hopkins Co., supra, 231 Iowa 251, 254, 1 N.W.2d 95, 97, is cited as authority for the contention. It does not so hold and we think no Iowa decision does.

The Low jury was instructed they could infer due care on decedent's part only if they found there was no obtainable direct evidence of her conduct at, and just before, the time she was injured. There was a verdict and judgment for defendant. Upon appeal plaintiff complained of the instruction on the alleged ground it was shown beyond dispute there was no such obtainable evidence and the jury should have been so instructed. In answer to this complaint we held it was not conclusively established there was no such obtainable evidence and the instruction was therefore not error in the respect claimed.

The trial court's judgment is—Affirmed.

LARSON, C. J., and HAYS, THOMPSON, PETERSON, GARRETT, and THORNTON, JJ., concur.

OLIVER, J., not sitting.