WILLIAM HUTCHINSON, administrator of estate of Oscar Herman, deceased, appellant, v. MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY et al., appellees.

No. 50077.

(Reported in 106 N.W.2d 419)

December 13, 1960.

James A. Lorentzen and Theodore T. Duffield, both of Des Moines, for appellant.

Lundy, Butler & Wilson, of Eldora, for appellees.

GARRETT, J.—This is a law action to recover damages for the alleged wrongful death of plaintiff's decedent who was killed at a railroad crossing in a collision of the auto-transport truck he was driving with defendant's train. The railroad counterclaimed for damage sustained by it. The claim against E. F. Schossow, engineer, was dismissed by the court.

The trial resulted in a jury verdict in favor of plaintiff for $14,229.34. Upon motion for judgment notwithstanding the verdict or a new trial the verdict was set aside and judgment was entered for the defendant upon plaintiff's claim and against defendant on its counterclaim.

I. Did the court err in sustaining the motion for judgment notwithstanding the verdict? The following facts must be considered. The deceased, Oscar Herman, was fifty-one years of age, married and resided in Detroit, Michigan. His health was good, he was steadily employed and he did not use intoxicants. At about 2:30 a.m. on December 2, 1958, he drove a Chevrolet truck-tractor and semitrailer loaded with new automobiles into the side of defendant's train at the intersection of U. S. Highway 30 and the Minneapolis & St. Louis Railway Company's track approximately two blocks north of the business district in the town of Grand Junction. The highway runs east and west and the railway tracks north and south. The train, composed of two Diesel locomotives and 13 cars, occupied the crossing for four or five minutes and at the time of the collision was backing south at a speed of about four miles an hour.

The point of impact with the boxcar was 22 feet and 6 inches north of the south end of the car. The locomotives were just north of the boxcar and immediately south of it was a flatcar which was 54 feet 2 inches in length and 3 feet 8 inches in height. The flatcar had moved across the highway just ahead of the boxcar. The point of collision was 18 feet 4 inches south of the north edge of the highway and 5 feet 8 inches north of the center island dividing the highway. No skid marks were

made by the truck on the dry pavement. There is no evidence decedent made any attempt to slow down or stop although his truck was in good mechanical condition, nor was there any evidence of a sudden emergency other than that made by the decedent, himself, when he came upon a train which had been blocking the highway for four or five minutes. The regulation whistle was given before the train proceeded upon the crossing, the "back up" whistle was given before the train began backing south and the bell was ringing continuously. There were also the noises incident to the operation of the train and the usual train lights.

Decedent was familiar with this crossing, and had expressed himself as being afraid of it. The usual crossarm sign at the crossing was reflectorized and could be seen a considerable distance from the track and within a few hundred feet of the track were reflectorized signs to advise those traveling west on the highway that they were approaching a railway crossing.

Appellee relies upon the testimony of three eyewitnesses who observed the movement of the truck immediately before and at the time of the collision. None claims to have seen the decedent or to have observed anything he did except as his actions were reflected by the movements of the vehicle he controlled.

Glenn Smothers, a truck driver, testified: "After this truck went around me, I stayed behind it from 500 feet to a quarter of a mile. * * * It had red taillights and clearance lights that I could see. * * * There wasn't any sudden movement to the right or left that I could observe. * * * I never noticed the stop lights of that truck transport go on. The stop lights would have showed a brighter light and I would have noticed it."

Norris E. Erickson, a telegraph operator working at the signal tower about 1300 feet south of the crossing, watched the lights of decedent's truck as it approached and struck the train. He testified: "There was no change in the direction or course of the headlights other than straight down the highway to the west. * * * Q. What would you say, in your judgment, that vehicle was traveling from the time you first saw it east of the crossing up until the time it struck the train? A. In my judgment, I would say that he was traveling at the speed of

right around fifty miles an hour. * * * I am sure that I would have been able to tell if the vehicle would have swerved, or changed its course, by watching the headlights. If he would have turned, I am sure I could have seen it."

Albert L. Pickett, a brakeman, testified the lights of the truck continued in the same direction and that the speed of the truck was approximately 45 to 50 miles an hour until the collision occurred.

The engineer, E. F. Schossow, was not called as a witness but his answer to an interrogatory was introduced. He stated: "I did not actually see this truck which approached from the east, which was my side of the engine until it was only a matter of about 100 feet from the side of the car on the crossing. We were moving then at a speed of about four miles per hour, and as I caught the glimpse of the truck out of my eye I immediately applied the brakes, * * *."

There was no evidence the decedent applied his brakes or did anything to avoid the collision. The boxcar weighing 48,700 pounds was knocked off the track and rendered valueless for railroad purposes.

The highway was level, wide and practically straight. The trial court found there were eyewitnesses and therefore decedent was not entitled to the benefit of the no-eyewitness rule and that he was guilty of contributory negligence which bars recovery.

██ The burden is, of course, upon plaintiff to plead and prove freedom of his decedent from contributory negligence. Paulsen v. Haker, 250 Iowa 532, 545, 95 N.W.2d 47, 55; Ruble v. Carr, 244 Iowa 990, 59 N.W.2d 228. In the Paulsen case we said: "The burden being upon plaintiffs [executors of decedent's estate] to establish her freedom from negligence contributing to the injuries suffered, in the absence of any evidence whatever upon the question of what she did or did not do, it must be held as a matter of law their case has failed in this respect."

Appellant in his argument states, "In the Prewitt v. Rutherford case, 238 Iowa 1321, 30 N.W.2d 141, this court held that the inference of due care was available to the plaintiff

even though there was an eyewitness to the movement of his truck." In that case, at page 1328 of 238 Iowa, page 145 of 30 N.W.2d, the court went on to say, however, "The witness Van Hook was not such a witness as would deprive plaintiff of the benefit of the no-eyewitness rule. He testified that at the time he passed plaintiff he was seventy-five to one hundred feet past the rear of the Laughary truck, traveling in the opposite direction. He was in no position to see and did not see plaintiff's actions during the 'material moments' just before the collision. Graby v. Danner, 236 Iowa 700, 18 N.W.2d 595." That case was factually different from the instant case in that there, plaintiff, who suffered amnesia as a result of the accident, came upon the unlighted parked truck in his path without any warning and with no eyewitness as to what he did in the material moments while he traveled the last seventy-five or one hundred feet. There was no showing as to the course he then traveled to the point of contact, and as stated in Rickabaugh v. Wabash R. Co., 242 Iowa 746, 751, 44 N.W.2d 659, 662, "The *time* of observation was not near enough to the moment of collision to be material."

Appellant cites Phinney v. Illinois Central R. Co., 122 Iowa 488, 98 N.W. 358; Platter v. Minneapolis & St. L. R. Co., 162 Iowa 142, 143 N.W. 992; Barrett v. Chicago, M. & St. P. Ry. Co., 190 Iowa 509, 175 N.W. 950, 180 N.W. 670; Hittle v. Jones, 217 Iowa 598, 250 N.W. 689; Davidson v. Vast, 233 Iowa 534, 10 N.W.2d 12; Hayes v. Stunkard, 233 Iowa 582, 10 N.W.2d 19; Jensvold v. Chicago Great Western R. Co., 234 Iowa 627, 12 N.W.2d 293; Riedesel v. Koch, 241 Iowa 1313, 45 N.W.2d 225; Van Wie v. United States, 77 F. Supp. 22; Hackman v. Beckwith, 245 Iowa 791, 64 N.W.2d 275; Franzen v. Perlee, 243 Iowa 285, 51 N.W.2d 478; Lorimer v. Hutchinson Ice Cream Co., 216 Iowa 384, 249 N.W. 220; and other cases which held the no-eyewitness rule applicable under the facts peculiar to the cited cases but essentially different from the circumstances involved here.

In his ruling on the motion for judgment notwithstanding the verdict the court said:

"This brings us to the question of where is there any evi-

dence of freedom from contributory negligence upon which a jury might base a finding? I can find none. The rule placing the burden on the plaintiff may in some cases seem harsh but it cannot be ignored.

"The plaintiff is not entitled to the benefit of the no-eye-witness rule. There was sufficient observation of decedent's vehicle during 'the material moments' to preclude the application of the rule.

"There is no showing of any diverting circumstances sufficient to make a jury question. Except that it was dark there was nothing to obscure the crossing. The weather was cold but clear. The road was quite flat with only a few minor curves. There was no traffic congestion. The only thing to bother decedent was the train in front of him and that could hardly be called diverting his attention away from danger. * * *

"If the decedent was afraid of the crossing, it must have been because he was afraid of a collision with a train. There is not a scintilla of evidence that the decedent, with his fear, took any precaution in the presence of a known hazard. * * * There were no skid marks indicating any braking by decedent. * * * If he was not looking he was negligent. If his speed was such that when he saw the train there was not time to even attempt a stop he was going too fast and was negligent."

In Platter v. Minneapolis & St. L. R. Co., supra, this court said at page 150 of 162 Iowa, "Again, it is the rule of this court that the presumption of care arising from the instinct of self-preservation does not apply where there are eye-witnesses of the entire transaction, nor will it obtain if the physical facts and uncontroverted circumstances show that deceased could not have exercised the care required of him at the time of the accident." (Citing cases)

The rule is well established that the question of contributory negligence is ordinarily for the jury and that it is only in exceptional cases that a verdict may be directed because of contributory negligence as a matter of law. Peterschmidt v. Menke, 249 Iowa 859, 863, 89 N.W.2d 152, and cases cited. The Peterschmidt case, along with many others, comes within the excepted class.

■ Our recent decision in Lingle v. Minneapolis and St. L. Ry. Co., 251 Iowa 1183, 104 N.W.2d 467, is of controlling importance here. In that case the engineer observed the truck approaching the crossing until it reached a point 150 feet away and no witness observed it âfter that. We held in that case and in many cases cited therein that one who did not see the decedent's movements during all of the material moments preceding the injury is not such an eyewitness as to deprive decedent's estate of the benefit of the inference of due care for his own safety, but that the inference arising from the no-eyewitness rule may be negatived by the facts and circumstances shown and, sometimes, conclusively. See cases cited.

In Mast v. Illinois Central R. Co., 79 F. Supp. 149, 162 (Judge Graven) affirmed, 8 Cir., 176 F.2d 157, many Iowa decisions are cited in support of the proposition that the inference arising from the no-eyewitness rule does not apply to moments covered by direct evidence. See Gray v. Chicago, R. I. & P. R. Co., 160 Iowa 1, 139 N.W. 934; Bussler v. Chicago, M. and St. P. Ry. Co., 165 Iowa 361, 366, 145 N.W. 533; Merchants Transfer & Storage Co. v. Chicago, R. I. & P. R. Co., 170 Iowa 378, 394–396, 150 N.W. 720.

In the instant case three witnesses testified they observed the movements and the course of the truck during the material moments, and the engineer's answer to interrogatories stated he saw the truck in the last 100 feet it traveled before the collision. Their evidence was supported by undisputed physical facts. The damage to the boxcar and the truck and its cargo indicated the excessive and dangerous rate of speed of the truck in a place of known danger. The absence of skid marks gave proof no effort to stop or slow down was made. The required whistles had been blown and the bell rang as required by law. There were no obstructions to the decedent's view and it was not a case of a train suddenly appearing from an obscured position. There were the required warning signs. No diverting circumstances were shown. It was the duty of the decedent to see what was plainly visible and to avoid the collision. Had he tried to change his course, slow down, stop or do anything to save himself there would have been physical if not eyewitness

evidence of it. See Van Patten v. Chicago, Rock Island and Pacific R. Co., 251 Iowa 1221, 102 N.W.2d 898.

It is our duty to examine the evidence, both direct and circumstantial, in the light most favorable to the plaintiff and give him the benefit of every reasonable inference therefrom. Having done this we are compelled to hold that defendant's motion for judgment notwithstanding the verdict was properly sustained. Beezley v Kleinholtz, 251 Iowa 133, 100 N.W.2d 105, 107; Lingle v. Minneapolis and St. L. Ry. Co., supra; Jacobson v. Aldrich, 246 Iowa 1160, 68 N.W.2d 733.

II. The witnesses stated they did not see the decedent as he sat in the cab of the truck he was driving and of course they could not say what he did or did not do except as his actions were reflected in the movements of the truck. The testimony that the truck did not slow down or change its direction or speed as it approached the crossing and collided with the train is most persuasive evidence that he did nothing. Looking and listening alone do not constitute proof of due care if the knowledge gained is not translated into action of some kind. Here the decedent drove his truck to the point of impact as though there were no train on the track ahead of him. The condition of the truck, its cargo and the boxcar immediately following the collision were mute evidence of the violence of the impact. No presumption or inference the decedent was exercising ordinary care could arise in the face of this positive evidence. Lingle v. Minneapolis and St. L. Ry. Co., 251 Iowa 1183, 104 N.W.2d 467.

In Hebert v. Allen, 241 Iowa 684, 689, 41 N.W.2d 240, 243, we said: "The movement of the car, under the record presented, was some evidence of the *conduct* of the driver."

The plaintiff having failed to meet the burden of proving decedent's freedom from contributory negligence, the judgment of the trial court must be and is affirmed.—Affirmed.

LARSON, C. J., and BLISS, HAYS, THOMPSON, PETERSON, and THORNTON, JJ., concur.