JAMES E. VANDELLO, administrator of estate of Harold C. Vandello, deceased, appellant, v. ALLIED GAS AND CHEMICAL COMPANY, an Iowa corporation, et al., appellees.

No. 50304.

(Reported in 110 N.W.2d 232)

1314

AUGUST 15, 1961.

Bailey C. Webber, of Ottumwa, for appellant.

Bray & McCoy, of Oskaloosa, and Gilmore, Dull & Keith, of Ottumwa, for appellees.

HAYS, J.—This is an action for damages arising out of a collision between the car operated by plaintiff's decedent and truck owned by defendant company and operated by its employee, Little. Defendant filed a counterclaim for damages to its truck. Both claim and counterclaim were submitted to a jury which failed to reach a verdict and was discharged. Thereafter, each party moved for a judgment notwithstanding the failure of the jury to reach a verdict. Each motion was sustained upon the ground of contributory negligence as a matter of law and each party has appealed.

Plaintiff, hereinafter called appellant, requested an instruction be given to the jury as to the applicability of the no-eyewitness rule which was refused by the trial court and nowhere in the instructions or in the ruling upon appellee's motion is the rule mentioned. Appellant's assigned errors, two in number, are directed at this proposition.

I. The no-eyewitness rule, briefly stated, is that where it is incumbent for the plaintiff in an action for damages predicated upon defendant's negligence to plead and prove his freedom from contributory negligence, which is the Iowa requirement, and there is no eyewitness to the mishap, and no obtainable direct evidence as to what decedent did or failed to do by way of precaution at or immediately prior to the time of his injury, there is an inference he was in the exercise of ordinary care and prudence for his own safety. Generally, such an inference poses a jury question upon the issue of freedom from contributory negligence. Discussion by Bruce M. Snell, Jr., in Iowa Law Review, Volume 43, page 57; Lingle v. Minne-

apolis and St. L. Ry. Co., 251 Iowa 1183, 104 N.W.2d 467, and cases cited.

II. It involves primarily a fact question and, in the instant case, requires a somewhat detailed analysis of the record.

The mishap occurred about 1 p.m., October 31, 1959, on Highway No. 63, known in the record as Madison Avenue, in the city of Ottumwa, Iowa. This avenue runs north and south; has an 18-foot paved slab with 10-foot dirt shoulders. The day was clear, the pavement dry, but the shoulders were muddy. Silk Avenue approaches Madison from the west with a "T" intersection. About 170 feet on north South Street approaches Madison from the east with a "T" intersection. Claudia's Beauty Shop is located at the northwest corner of the intersection of Madison and Silk and faces south on Silk.

On the date in question James E. Vandello, the deceased, accompanied by his wife, drove to the entrance to the beauty parlor, on Silk, where his wife left the car and started up the walk to the beauty parlor. Vandello backed his car east and south from Silk to Madison, headed north and was moving about 10 miles an hour. Mrs. Vandello testified she found the door to the beauty shop locked and went east on to Madison Avenue to contact her husband. At this time Mrs. Claudia Chesser, operator of the beauty shop called to her and she turned and went back to the shop. She states she is sure her husband's car was entirely on the pavement and in the east lane of travel. She heard the crash but did not see the truck, which was coming from the south, until after the collision.

Mrs. Chesser states the last time she saw decedent's car it was sitting on the east shoulder of Madison Avenue facing north. She did not see the truck approaching from the south and heard only the crash. She did not see the collision.

Melvin Funk states he was standing a little south of Silk and west of Madison, facing northeast at the time decedent backed his car from Silk onto Madison, saw Mrs. Vandello approach the car on Madison and then turn back toward the beauty shop. The car was crossing Silk at about 10 miles per hour. He says "as near as I could tell" the decedent's car was off onto the shoulder. He then observed the truck as it reached

Silk and saw it turn to the west lane to pass decedent's car. It appeared the front end of the truck was ahead of the car. He did not see the car at the time of the crash. He says "as far as I could see, it [the car] was still on the shoulder" the last time he saw it.

Joseph McCarthy was driving north into Ottumwa and was about two blocks back of the truck, which was traveling in the east lane. He observed the brake lights of the trailer go on and swerve to the center of the road. Up to that time he observed no other vehicles on the highway or on the east shoulder. On cross-examination it developed that in a prior statement he stated he saw a car turn directly into the path of the truck. He says it was his impression that he saw a car coming from the north turn to the left in front of the truck. He says he could not tell where the car came from.

Richard D. Smith, a highway patrolman, who arrived at the scene of the collision about 1:15 p.m., states he found debris on the paving just north of the Silk intersection and on Madison. He states the car was hit on the trunk by the right front side of the truck. There were tire marks on the trunk of the car. He also states that he saw no marks leading from the shoulder onto the highway in the vicinity of the debris found on the pavement. The cars came to rest near South Street.

John Zessiger was driving south on Madison and was several blocks to the north at the time of the collision. He states he saw the truck swerve to the left and start to weave and watched it until it crashed. He did not see decedent's car until after the ambulance arrived.

Gene Little, driver of the truck, states he was driving his truck, loaded with propane gas and weighing 63,000 pounds, north on Madison and as he came to Silk Avenue he saw no other vehicle. Decedent's car was about 25 feet ahead when he first saw it and it was headed northwest, turning to the right, going north, pulling onto the highway into the east lane. He states the collision happened almost instantly after he saw it. He states he was driving 35 miles per hour although there is testimony placing his speed at 55 to 60 miles per hour.

While numerous other witnesses testified none of them observed the collision.

1318

III. As to just what period of time and under what circumstances preceding the accident one must have been an observer to be an eyewitness, such as to bar the application of the rule, is not readily susceptible of any hard and set rule but rather must be determined in each case in the light of its own factual situation. Van Wie v. United States, D. C. N. D. Iowa, 77 F. Supp. 22.

IV. We have consistently held that where a witness saw decedent but an instant before the mishap, such witness is not an eyewitness within the purview of the rule. Hayes v. Stunkard, 233 Iowa 582, 10 N.W.2d 19; Hackman v. Beckwith, 245 Iowa 791, 64 N.W.2d 275; Hamilton v. Becker, 249 Iowa 516, 86 N.W.2d 142. Under Gene Little's own testimony he is not an eyewitness as his view was only for an instant before the crash.

V. In Rickabaugh v. Wabash R. Co., 242 Iowa 746, 752, 44 N.W.2d 659, we held that a witness to the movement of a vehicle during the material moments in which it approached the site of the mishap in which the operator is killed is, for all practical purposes, an eyewitness to the conduct of the operator so as to make the no-eyewitness rule inapplicable. See also Hackman v. Beckwith, 245 Iowa 791, 798, 64 N.W.2d 275; Paulsen v. Haker, 250 Iowa 532, 95 N.W.2d 47. There two witnesses observed the decedent's car proceed a distance of 70 feet back from the tracks up to the moment of the crash. To say that the testimony of witness Funk places him in the position of an eyewitness under the rule announced in the Rickabaugh case is to extend the rule to an extent we are not prepared to go.

As to witness McCarthy, it is problematical, even under his cross-examination, if he ever did see decedent's car prior to the collision.

VI. In Lingle v. Minneapolis and St. L. Ry. Co., supra, 251 Iowa 1183, 104 N.W.2d 467, two other contingencies are mentioned which may bar the use of the no-eyewitness rule. (1) Physical facts and circumstances. (2) Even though not observed at the material moments just prior to the collision, it was at the time of last observance too late for the driver to ex-

tricate himself from the position of danger in which he by his own negligence had placed himself.

No witness saw decedent or his car for more than a minute or two prior to the crash. Mrs. Vandello places the car in the east lane and proceeding north; Mr. Funk places it on the east shoulder and going north; Mrs. Chesser places it as standing on the east shoulder. None of these witnesses testifies to any negligence upon the part of the operator or based upon the last seen position of the car.

As to physical facts and circumstances, which will eliminate the rule even though there are no eyewitnesses, we fail to find such in the record. The testimony all indicates that the truck swerved to the left as though to overtake and pass another vehicle going in the same direction. The point of contact was about the center of the highway with the right front end hitting the trunk of the car. There was an absence of any showing of muddy tracks upon the pavement indicating a car had recently pulled from the muddy shoulder onto the highway. Viewing this record without regard to the rule that appellant is entitled to have it examined in the light most favorable to him, we find nothing in the direct testimony or the physical facts which show with any degree of certainty how the collision occurred or the circumstances surrounding it. The only things that do appear with any degree of certainty are that at the time in question, decedent's car was somewhere upon Highway No. 63, headed north, and was struck from the rear by defendant's truck which was going north and decedent was killed.

VII. One other proposition is urged by appellee as to why the no-eyewitness rule is not applicable. It is that there is no showing that eyewitnesses or other direct evidence to the accident were unavailable, citing Low v. Ford Hopkins Co., 231 Iowa 251, 1 N.W.2d 95. This case is not in point. There a witness stated he inquired but found no eyewitness to the mishap. The court instructed the jury to the effect that if it should find there was no direct evidence available, then and only then would it be justified in giving plaintiff the benefit of the no-eyewitness rule. On appeal it was urged that the jury should have been directed to give plaintiff the benefit of the rule. The

1320

case holds such a showing was not conclusive and the instruction was proper. See Lingle v. Minneapolis and St. L. Ry. Co., supra, 251 Iowa 1183, 1192, 104 N.W.2d 467.

■ While one of the elements of the rule is that direct evidence is not available, a showing which rests upon the plaintiff, we have never attempted to pinpoint just what showing must be made, to come within the rule. While in the instant case there is no testimony that plaintiff was unable to find direct testimony, as there was in the Low case, supra, we are not prepared to say that in the absence of such testimony the rule is not applicable. This record clearly indicates that both parties spent considerable time and effort in seeking to obtain the facts and we think there is a sufficient showing made to warrant a submission of this question, i.e., availability of eyewitnesses, to the jury as a prerequisite to the applicability of the no-eyewitness rule. That is all plaintiff requested, and the refusal of the trial court to so instruct constituted prejudicial error.

■ VIII. The trial court sustained plaintiff's motion for judgment notwithstanding the failure of the jury to reach a verdict as to defendant's counterclaim, as a matter of law. Such motion was properly sustained. Defendant driver of the truck testified that at no time did he see a car ahead of the truck until it appeared about 25 feet ahead of him. We have many times stated that one operating a vehicle upon the highways may not close his eyes to that which is plainly visible and thereby escape the consequences of such blindness. See Mueller v. Roben, 248 Iowa 699, 82 N.W.2d 98; Law v. Hemmingsen, 249 Iowa 820, 89 N.W.2d 386; Miller v. Stender, 251 Iowa 123, 98 N.W.2d 338.

For the reasons above set forth the judgment of the trial court is reversed and cause remanded on plaintiff's appeal. The judgment of the trial court is affirmed on defendant's appeal.

All JUSTICES concur.